84 435
129  54
30a 493

## George Chandler

*v.*

## John P. White *et al.*

1. Estoppel in pais—*fraud an essential element.* The doctrine of estoppel *in pais,* or equitable estoppel, is based upon a fraudulent purpose and a fraudulent result, and if the element of fraud is wanting there is no estoppel.

2. To conclude a party by an equitable estoppel, or an estoppel *in pais,* there must be a fraudulent purpose of the party against whom it is applied, or his acts must produce a fraudulent result; and there must be a change of conduct induced by the acts of the party estopped, to the injury of another, in order to prevent him showing the truth.

3. Forged release—*owner need not record instrument to counteract.* It is the duty of both the trustee and *cestui que trust,* when a forged release of their trust deed is recorded, to inform all persons who may apply to them for information, that such release is a forgery; but the law does not require them to execute and record any instrument to counteract the forgery.

4. Nor does the law require that the owner of land shall, within any particular period, commence proceedings at law or in equity, against a forger of title to his land, to vindicate his good title against the fraudulent claim of the forger or one claiming under him. He may bide his time and trust to the strength of his title.

5. Sale—*place of, under trust deed, when place named in deed is destroyed by fire.* Where the place of sale provided for in a deed of trust, is the north door of the court house, and before the day of sale the court house is destroyed by fire, a sale made on the ground immediately in front of where the north door was at the time of the execution of the deed is good.

Appeal from the Circuit Court of Ford county; the Hon Thomas F. Tipton, Judge, presiding.

Messrs. Goudy & Chandler, for the appellant.

Messrs. Wood & Loomis, for the appellees.

Mr. JUSTICE SCHOLFIELD delivered the opinion of the Court:

Warren E. Esty having purchased the land in controversy, of James R. Allen, and given him his promissory note for $1850, the balance of the purchase money, on the 18th of March, 1871, made his deed of trust of the land to John P. White, as trustee, to secure the payment of the note. On the 19th of August, 1871, White, as agent of Allen, sold and transferred the note to Sedgwick; and, on the 12th of February, 1873, White, having sold the land at public sale, as trustee, for the payment of the amount due on the note, to Milton L. Grube, conveyed the same to him by deed.

On the 21st of June, 1871, Esty executed a deed purporting to convey the land to Henry Porter, but did not place it upon record until the 28th of February, 1872; and on the 22d day of June, 1871, an instrument, purporting to be a mortgage of the land from Porter and wife to himself, was executed, to secure $4000 of the purchase money. On the 11th of September, 1871, Esty filed for record a forged release, purporting to be executed by John P. White, on the 8th of the same month, and releasing the deed of trust given to secure the payment of the Allen note.

In May, 1872, application was made, in the name of Henry Porter, to the Merchants, Farmers and Mechanics' Savings Bank, of Chicago, for the loan of $3000, on the security of the land in controversy. The application was made by Esty, who resided at Chatsworth, in Livingston county, to Goodell & Warren, loan agents at Loda, in Ford county. He represented that Porter's post office address was Piper City, in Ford county, near which the land lies. From the abstract furnished the bank, which included the forged release of the White deed of trust, without anything to indicate that it was a forgery, the bank was satisfied with the security and forwarded the money to Goodell & Warren. Notes were given the bank, in the name of Henry Porter, and a deed of trust was also delivered, purporting to be executed by Henry Porter and Fanny Porter, his wife, and acknowledged before Warren E. Esty, as

notary public, to George Chandler, as trustee, to secure the payment of the notes. Esty produced to Goodell & Warren an order, purporting to be signed by Porter, for the money, and it was paid to him. The proof is clear, and the fact is acknowledged by all parties, that no such person as Henry Porter ever lived at or near Piper City, and all' papers purporting to be executed by him, or by him and his wife, were, in fact, executed by Esty. And the proof is satisfactory, also, that the release, purporting to be signed by White, of the deed of trust to secure the Allen note, was a forgery.

The bill of appellant, as finally amended, charges Esty with executing the notes to the bank, and the deed of trust to Chandler to secure their payment, by the name of Henry Porter. The sale by White to Grube is assailed on the ground, first, that, conceding the release to have been a forgery, White and all persons claiming under him, are estopped from denying its authenticity by reason of his negligence to give notice that it was a forgery; and, secondly, that notice of the sale was not given in the manner required by the deed of trust or the law.

The substance of the prayer is, that the sale to Grube be set aside, and that the trust deed to White be declared satisfied so far as it may affect the rights of the bank under the deed of trust to Chandler, or, at all events, that the bank be allowed to redeem from the sale under deed of trust to White. The prayer of Grube's cross-bill is, that his title be confirmed, and that the forged release, purporting to be executed by White, and releasing the deed of trust to him, be declared void, and also that the deed of trust to Chandler be declared void.

The court denied the prayer of appellant's bill, and decreed in conformity with the prayer of the cross-bill.

The first, and, as we think, most important, question raised by appellant, is, do the facts in evidence show that White, the trustee, and Sedgwick, the *cestui que trust*, were, by negligence in giving notice of the forgery of the release purporting

to be executed by White, estopped from setting up the truth and showing that the release was a forgery.

The evidence shows that both White and Chandler were residents of the city of Chicago, and unacquainted with each other. Sedgwick, the holder of the Allen note, was also a resident of Chicago, and does not appear to have been personally acquainted with Chandler. The lands are located in Ford county. In the latter part of the winter or early part of the spring of 1872, White was verbally informed that the forged release had been placed on record, and that Esty had been trying to borrow money on the land from his informant. He says Sedgwick was then absent from the city, and it appears Sedgwick had no notice of the forged release until about the 28th of October, 1872, shortly after which an affidavit declaring the release to be a forgery, was placed on the records of Ford county. There is no evidence tending to show that either White or Sedgwick had notice of the transaction between Esty and the bank which resulted in the Porter loan, and the execution of the notes and trust deed on account thereof. White gave Chandler no notice of the sale he made under his trust deed, but alleges, as an excuse, that Chandler being unknown to him, he was unable to ascertain his location. Grube is not shown to have been a purchaser in bad faith. He was privy to none of the transactions affecting the land, anterior to the sale, and when he purchased he was informed the release of the deed of trust on the record was a forgery. The price he paid, while less than the estimated value of the land, was not so grossly inadequate as to raise the presumption of fraud.

It was said, in *Davidson* v. *Young et al.* 38 Ill. 152, "The doctrine of estoppels *in pais*, or equitable estoppels, is based upon a fraudulent purpose and a fraudulent result. If, therefore, the element of fraud is wanting, there is no estoppel." And in *Flower et al.* v. *Elwood et al.* 66 Ill. 447, it was said: "To conclude a party by an equitable estoppel, or an estoppel *in pais*, there must be a fraudulent purpose of the party against whom it is applied, or his acts must produce a

fraudulent result; and there must be a charge of conduct induced by the acts of the party estopped, to the injury of another, in order to prevent him from showing the truth." The Porter loan was not induced by any act or declaration of White or Sedgwick, and there was no standing by and permitting those acting in that transaction to deal with the property as if the deed of trust to White had been released. It is not pretended that White or Sedgwick had the slightest knowledge of the transaction, until long after it was closed. The deed of trust to White had been recorded, and the debt was not paid; and we are not aware what more could have been done than was done, to protect the title. It was, unquestionably, the duty, both of White and Sedgwick, to inform all persons who applied to them for information, of the truth; and we have no doubt, had they, or Sedgwick alone, been present and heard negotiations in regard to the property upon the supposition that the release was valid, and not corrected the error, he would, thereafter, have been estopped to enforce payment of his note from the land to the prejudice of the party whom he had thus permitted to be deluded.

But the law requires the execution and recording, by the person holding the title, of no instrument in addition to that which evidences his title, that we are aware of, to counteract the forgery by which he is sought to be robbed of his property; nor does it require that the owner of the title shall, within any particular period, commence proceedings at law or in equity, against the forger, to vindicate his good title against the fraudulent claim of the forger, or one claiming under him. He may bide his time and trust to the strength of his title.

In *Meloy* v. *Collins et al.* 41 Cal. 663, where, in an action to recover possession of land held by an innocent purchaser, who claimed title through a forged deed which had been of record five years, with the knowledge of the plaintiff, it was held the delay of the plaintiff to attack the forged deed is not material, if it be not relied upon as extinguishing the plaintiff's title by operation of the Statute of Limitations; and

such delay does not estop the plaintiff to say that the alleged deed is not his deed.

A person obtaining title to property, or an incumbrance upon property, is exposed to the hazard of defective or worthless titles, and his protection lies in the covenants he exacts; and, in the absence of fraud, and where no question arises under the registry laws, it is for him to hunt up and inquire into the rights of adverse claimants, and not for them to anticipate his intentions and give him personal notice of their claims in advance of his negotiating in regard to the property.

The next question is this: The deed of trust to White required him to make sale of the property at the north door of the court house, in the city of Chicago. The parties stipulate, " that at the time of the execution of said deed of trust to White, by said Esty, the north door of the court house of the county of Cook, in the city of Chicago, was located at the south end of a platform at the head of a flight of stone steps, and elevated about twenty feet from and south of the lowest step of said flight of stairs, and was the principal entrance to said court house; and that in said court house were then held the circuit and Superior courts, the recorder's and county courts of Cook county, and it contained the county and city offices, and was a place where many persons were continually passing; and prior to said sale, and on the eighth and ninth days of October, A. D. 1871, said building was destroyed by fire; and that the walls of said building, and said steps, had been, prior to said sale, torn down and removed; and at the time of said sale, that portion of said court house where said north door had been, consisted of nothing but a pile of rubbish, and there was no door, platform or steps remaining; and that said sale was made upon the ground in front of said rubbish, at the foot of where said flight of steps had been. And at the time of said sale no courts were held in that part of said building."

It is claimed the sale was not made at the place named in the deed. We think the place was well selected. It is impos-

sible that a person in search of the place named in the deed, could have missed being at the place where the sale was made, and if the notice, following the language of the deed, caused persons to make an effort to be present at the sale, they must have come to where it was actually made. The compliance, although not literal, was substantial and sufficient. *Gregory* v. *Clark et al.* 75 Ill. 485; *Waller* v. *Arnold et al.* 71 id. 350.

Inasmuch as the foregoing views dispose of all the substantial claims made by the appellant, it is not important that much be said upon the remaining question presented in his argument. He complains that the court decreed that the deed of trust to him was a nullity because forged. Whether a nullity for that cause or because there is now no property to which it can attach, could make no apparent difference, as it seems to us. But we agree with the court below. He took nothing under his deed of trust, because it was forged. The cases cited in his brief do not meet this question. It is quite true that a party may adopt and be sued by any signature he chooses; but the parties here have not recognized this as a transaction with Esty. He was acting, as he claimed, as a mere agent. He did not sign his own name, or a name whereby it was understood he was to become bound himself. The loan was not to him. The legal title was not in him. The loan was to Henry Porter, in whom was the title of record, and his name was forged throughout the transaction. Whether Porter was a myth, or there is, some where other than as represented by Esty, a person bearing that name, to whom the conveyance was made, is immaterial. It was still a forgery in Esty. Whether, if Esty were alone sued, he would be estopped from setting up the forgery, we do not think necessary to determine; but as to all others, we think the court below properly held appellant could not enforce a claim by virtue of a forged deed, or base any legal or equitable right thereon.

The decree is affirmed.

*Decree affirmed.*