# MARSHALL D. TALCOTT

## v.

## CHARLES E. BRACKETT.

1. STATEMENT.—Appellant sold to Brackett his interest in the *Western Furniture Trade*, a paper published in Chicago, and stipulated not to become in any way interested in a newspaper of similar character within the limits of Cook county, so long as Brackett should continue the publication of the paper above mentioned.   Brackett took in other persons as partners, and afterwards sold his interest in the paper to them, and gave the usual notice of dissolution of partnership and sale.   Appellant then commenced the publication of the *American Furniture Gazette*.   Afterwards Brackett, claiming a failure of his former partners to make their payments to him, and that such sale was conditional, took possession of the paper sold by him, and brought a bill to enjoin appellant from publishing the last mentioned paper.

2. CONTRACTS IN RESTRAINT OF TRADE.—It is the settled rule of law that any agreement in general restraint of trade is illegal, as being against public policy.   But there are exceptions to the rule, where the restraint is limited as to time, or place or persons.   In such cases, if the contract is

Talcott v. Brackett.

based upon a good and valuable consideration and the limitation is reasonable, it will be upheld. Even in the latter case the law presumes it void until the consideration and reasonableness of the limitation is shown.

3. Construction of such contracts.—Such being the light in which even limited contracts are viewed, the law will not extend to them the rules of liberal interpretation, but will apply those of strict construction only.

4. Estoppel in pais.—In this case the complainant having by the circulation of printed circulars, and by verbal statements, announced that he had sold his interest in the paper in question, and had no further connection with it or its management, he is now estopped to deny that fact, or to claim that the sale by him was only conditional.

5. Injunction without limitation.—The covenant of the defendant bound him not to publish a paper within the limits of Cook county. The injunction restrained him from making such publication anywhere, and is therefore erroneous.

Appeal from the Superior Court of Cook county; the Hon. S. M. Moore, Judge, presiding. Opinion filed, January 7, 1880.

Mr. Frank J. Smith, for appellant; that the covenant in restraint of trade should be strictly construed, cited Wiggins Ferry Co. v. O. & M. Ry. Co. 72 Ill. 360; Westfall v. Mapes, 3 Grant. 198; Roller v. Ott, 14 Kan. 614; Ross v. Sadgbeert 21 Wend. 165.

The conveyance to DeBerard was an actual sale, having none of the elements that constitute a mortgage: 2 Burrill Law Dic. 212; Story on Bailments, § 287; 4 Kent's Com. 154; Porter v. Parmley, 13 Abb. Pr. 104: Parshall v. Eggart, 52 Barb. 367; Hunt v. Rousmaniers, 8 Wheat. 174; Holmes v. Hall, 8 Mich. 66; McGriff v. Porter, 5 Fla. 373.

Complainant is estopped: Quirk v. Thomas, 6 Mich. 120; Home v. Cole, 51 N. H. 287; Smith v. Newton, 38 Ill. 230; International Bank v. Bowen, 80 Ill. 541.

Mr. E. H. Brackett and Messrs. G. W. & J. T. Kretzinger, for appellee; that the contract was a reasonable one, and not illegal, cited Linn v. Sigsbee, 67 Ill. 75; Beard v. Dennis, 6 Ind. 201; Avery v. Sangford, 1 Kay, 633; Ward v. Byrne, 5 M. & W. 548; Turner v. Evans, 2 E. & B. 512; Miller v. Elliott, 1 Ind. 484; Taylor v. Owen, 2 Blatch. 301; Green v.

Price, 13 M. & W. 695; Pierce v. Woodward, 6 Pick. 206; Mott v. Mott, 11 Barb. 133.

The contract of sale between appellee and De Berard was only conditional, in the nature of a chattel mortgage: Story on Sales, § 313; Couse v. Tregent, 11 Mich. 66; Beesom v. Dougherty, 11 Humph. 50; Herring v. Hockpock, 2 Duer, 20; Tibbitts v. Towle, 14 Me. 341; Shep. Touchstone, 118; Murch v. Wright, 46 Ill. 487; Bonney v. Smith, 17 Ill, 531; Strother v. Law, 54 Ill. 413; Dunning v. Stearns, 9 Barb. 630; McComber v. Parker, 14 Pick. 497; Langdon v. Buel, 9 Wend. 80; Bank of Rochester v. Jones, 4 Comst. 497; Whisler v. Roberts, 19 Ill. 274; Carroll v. Ballance, 26 Ill. 9.

Appellee had the right to take possession of the property on failure to pay: DeWolf v. Babbett, 4 Mason, 289; Reed v. Upton, 10 Pick. 522; Bloxam v. Sanders, 4 Barn. & Cres. —; Harris v. Smith, 3 Serg. & R. 20; Hassey v. Hamton, 4 Mass. 405; Doelsley v. Varley, 12 Adol. & E. 102; Reeves v. Capper, 5 Bing. 136; Strong v. Taylor, 2 Hill, 326.

The power of sale under a mortgage is a power coupled with an interest, and irrevocable: Pardee v. Lindley, 31 Ill. 174; 4 Kent's Com. 146; Wilson v. Troup, 2 Cow. 197; Sargeant v. Howe, 21 Ill. 148; Vansant v. Allmon, 23 Ill. 30.

There is no estoppel: Davidson v. Young, 38 Ill. 146; 2 Story's Eq. Jur. § 1543; Sellen v. Groe, 41 N. H. 465; Train v. Kiefer, 13 Ala. 136; Dixfield v. Newton, 41 Me. 221; Taylor v. Ely, 25 Conn. 250; Hill v. Eply, 31 Pa. St. 331; People v. Brown, 67 Ill. 437; Dagell v. Odell, 3 Hill 219; Welland Canal Co. v. Hathaway, 8 Wend. 483; Copping v. Gould, 16 Wend. 531; Titus v. Morse, 40 Me. 348; Hefner v. Vandolah, 57 Ill. 520; Preston v. Mann, 25 Conn. 118; Thomas v. Bowman, 29 Ill. 429; Danforth v. Adams, 29 Conn. 107; Muller v. Pondit, 55 N. Y. 320; Davis v. Smith, 43 Vt. 269; Mayenberry v. Hays, 50 N. Y. 675; Andrews v. Lyons, 11 Allen, 349; Bigelow on Estoppel, 493; Otis v. Sill, 8 Barb. 102; Devereaux v. Burgwyn, 5 Ind. 351; Pichard v. Sears, 6 A. & E. 474; Lawrence v. Brown, 1 Selden, 401; Duel v. Bear River Co. 5 Cal. 138; Roe v. Jerome, 18 Conn. 138; Letcher v. Morrison, 27 Ill. 209; Rogers v. Farwell, 9 Barb. 618; Mills v. Graves, 38 Ill. 467; Dorlarque v. Cress, 71 Ill. 380.

McAllister, J. This was a bill filed by Brackett, in the Superior Court of Cook county, against Talcott, to restrain the latter from publishing a certain journal, called the "American Furniture Gazette." A temporary injunction was awarded, rerstraining Talcott from publishing or distributing said "Gazette, or any like publication devoted to the furniture trade and manufacturing business, or transferring the same to any other party; from soliciting advertisements of the character contained in said "Gazette," or any publication of like character, until the court should order to the contrary. On hearing upon bill, answer, replication and proofs, this injunction was made perpetual, and from that decree Talcott appealed to this court.

It appears that in August, 1874, these parties went into partnership as equal partners, in the publication of a journal known by the name of the "Western Furniture Trade," which was continued until January 1, 1876, when Brackett bought out Talcott's interest for the consideration of $2,000, and the firm was dissolved. The contract by which this was effected being under seal contained the covenant on the part of Talcott, the party of the first part, with Brackett, the party of the second part, as follows : "And the said party of the first part hereby covenants and agrees that he will not in any way whatsoever be connected with, work, or use his influence for any newspaper or other publication connected with the furniture trade, within the limits of Cook county, in the State of Illinois, so long as said party of the second part himself owns and controls an interest in the said 'Western Furniture Trade,' except as provided and agreed in this instrument."

It appears that after Brackett so purchased Talcott's interest in said journal, known by the name of "Western Furniture Trade," he ceased to publish one by that name; and in August, 1877, he associated with him one J. W. Ealy and Frederick W. De Berard, as co-partners, and they, under the firm name of Brackett, Ealy & Co., began the publication of another and somewhat different paper, and gave it the name of the "Furniture Trade Journal," which they continued down to April 30, 1879, when De Berard bought out Ealy and Brack-

ett, with the view of continuing the publication alone. The contract of purchase and sale between Brackett and De Berard of the interest of the former in said last named paper was *inter partes*, under seal, and bore date May 1, 1879, wherein it was witnessed that Brackett as party of the first part, in consideration of one dollar paid him by De Berard, party of the second part, and seven promissory notes made by the party of the second part, payable to the party of the first part, one for $2,500, with interest at 8 per cent. per annum, due July 5, 1879; one for $500, same interest, payable Oct. 1, 1879; five notes for $271.77 each, same interest, payable, respectively, Jan. 1, April 1, July 1, Oct. 1, 1880, and Jan 1, 1881, hath sold, assigned, etc., and doth sell, etc., unto said party of the second part, all his right, title and interest in and to the following described property, to wit: an undivided two-thirds interest in a certain newspaper or publication now known as the " Furniture Trade Journal," and now published in the city of Chicago, together with all the books, stationery, engravings and office furniture now used in the transaction of the business of said publication, to have and to hold the same unto the said Frederick De Berard, his personal representatives or assigns, for his and their own use and behalf, forever.

Provided, however, that in case the said party of the second part fails to pay or cause to be paid any of the seven notes before mentioned, with the full amount of interest accrued thereon, when the same becomes due, then and in that case the party of the first part may at any time thereafter, upon the cancellation or surrender to party of second part of all of such notes not then due, declare the sale or assignment herein mentioned to be void and forfeited; and may, in his own name or by attorney or agent, without proceedings at law or notice, enter into and take possession and absolute ownership of the said property, free from all claims and demands, and retain all moneys and notes received, except such notes as have not come due at the time."

There was also a covenant by DeBerard that he would not sell or dispose of any portion of the property therein conveyed while any of said notes remained unpaid.

Talcott v. Brackett.

The evidence shows that soon after May 1, 1879, the date of said sale, Brackett personally distributed circulars bearing his name and that of Ealy and DeBerard among persons engaged in the furniture business, and Talcott's acquaintances, of which this is a copy:

"Chicago, May, 1879.

"Mr. F. B. DeBerard having purchased the good will and other property of the 'Furniture Trade Journal,' the firm of Brackett, Ealy & Co. has been dissolved by mutual consent.

"Chas. F. Brackett and John W. Ealy will collect the outstanding accounts of the said firm of Brackett, Ealy & Co., including the advertising accounts for the May issue of said publication.

"CHAS. E. BRACKETT.
"JOHN W. EALY.
"FREDERICK B. DEBERARD.

"As we desire to close the books and wind up the affairs of Brackett, Ealy & Co. as soon as possible, we would respectfully request the prompt remittance of the amount called for in the enclosed.

"Very respectfully,

"CHAS. E. BRACKETT.
"JOHN W. EALY."

Brackett, while distributing these circulars, told several persons engaged in the furniture business that he had sold out his interest in "The Furniture Trade Journal" to DeBerard; and to one person he said he had sold out to DeBerard and was out of the paper altogether, and had gone into the hardware association. These acts and declarations of Brackett were reported to Talcott by the several persons who witnessed and heard them. And then, May 17, 1879, Brackett came into Talcott's place of business and there, in his presence, delivered one of said circulars to a man of the name of Johnson, with whom it does not appear that Brackett, Ealy & Co. had had any previous dealings; and thereupon, Talcott said to Brackett, "I suppose if you should go into DeBerard's office and dictate what he should do, he would tell you to go to the Old Harry." "No," said Brackett, "he would tell me to go to hell." Brackett

further told Talcott that he had sold out to DeBerard, who had married well; that his wife would soon come into possession of $25,000, and that would aid him in carrying on the paper. After that interview, but on the same day, Talcott, without any knowledge as to the sale from Brackett to DeBerard, except what was derived from said circular and Brackett's own declarations as aforesaid, entered into contracts for paper, type, etc., for the publication of the paper which was afterwards restrained by the injunction in this case, called as before stated, "The American Furniture Gazette." After its publication, and in July 1879, Brackett, claiming that DeBerard had failed to pay according to his contract because of Talcott's publication of that paper, took possession of "The Furniture Trade Journal" concern, under the power in said contract between him and DeBerard, and filed this bill to restrain Talcott from continuing to publish or from disposing of said paper, "The American Furniture Gazette," on the ground that at the time its publication began he himself owned and controlled an interest in the said "Furniture Trade Journal," and that Talcott in publishing his paper violated his covenants above set forth, which restrained him from so doing so long as Brackett himself owns and controls an interest in said "Western Furniture Trade," the original paper, Talcott's interest in which Brackett had purchased, as above set forth, in January, 1876.

Appellant's counsel insists that because Brackett, prior to August 28, 1877, had ceased to publish the paper known as the "Western Furniture Trade," the one specially named in the covenant, and at the date last named was interested in and published one of a different scope and name, viz: "The Furniture Trade Journal," and because the limit or restraint imposed by Talcott's covenant was to continue only so long as Brackett should himself own and control an interest in the said "Western Furniture Trade," it was therefore no breach of Talcott's covenant for him to publish "The American Furniture Gazette," irrespective of any other question in the case, simply on the ground that when the paper by the name of the "Western Furniture Trade" ceased, the covenant, not extending in terms to one of like character or of another name, which might be sub-

Talcott v. Brackett.

stituted in its place, and as the covenant must be strictly con-
strued as being one in restraint of trade, the restraint itself
ceased with the paper specifically designated by the covenant.
If the decision of the case necessarily turned upon that point,
we confess that we should have great difficulty in overcoming
or answering it.

It is the settled law that any agreement, by bond or other-
wise, in general restraint of trade is illegal and void, as contra-
vening public policy.   The reasons are: 1. Such contracts in-
jure the parties making them, because they diminish their
means of procuring livelihoods and a competency for their fam-
ilies.   They tempt improvident persons, for the sake of present
gain, to deprive themselves of the power of making future
acquisitions, and expose such persons to imposition and oppres-
sion.   2. They tend to deprive the public of the service of men
in the employments and capacities in which they may be most
useful to the community, as well as to themselves.   3. They
discourage industry and enterprise, and diminish the products
of ingenuity and skill.   4. They prevent competition and
enhance prices.   5. They expose the public to all the evils of
monopoly.

Upon considerations like these the common law for hun-
dreds of years, has held such contracts illegal and void.   Alger
v. Thatcher, 19 Pickering, 51, and cases referred to.   Under
this rule exceptions have been recognized where the restraint
of trade was limited as to time, or place, or persons.   In such
cases, if the contract is based upon a good and valuable consid-
eration, and the limitation is reasonable, which is a question of
law for the court, they are upheld and enforced.   But the law,
even in this latter class, presumes them void until the consid-
eration and the reasonableness of the limitation are shown.
Chappel v. Brockway, 21 Wendell, 158; Ross v. Sadgebees, Ib.
106; Beard v. Dennis, 6 Ind. 200; Linn v. Sigsbee, 67 Ill. 75.
Such being the light in which even limited contracts in res-
traint of trade are viewed by the common law, it must neces-
sarily follow, upon principle, that that same law will not ex-
tend to them the rules of liberal interpretation; but on the con-
trary, will apply those of strict construction only.   Withhold-

ing from the terms of the covenant in question an application
of the rules of liberal construction, and construing them strictly,
we should, as before stated, find much difficulty, if we were
compelled to decide the question, in holding that a cessation of
the publication of the paper specifically named, did not also
determine the limits upon Talcott's restraint.

Without stopping to consider any of the other propositions
discussed by counsel, we will now, as briefly as possible, state
what we consider to be the controlling question in this case;
and that is, whether the facts do not present a proper case for
the application of the doctrine of estoppel *in pais* as to Brackett.
The sale which he made to DeBerard, May 1, 1879, was an
executed sale, which passed the title to the latter, but with a
provision for forfeiture for breach of condition subsequent.
There was much said by appellee's counsel about this instru-
ment being a chattel mortgage, and having been acknowledged
and recorded. The bill does not allege that it was acknowl-
edged before any justice of the precinct where the parties, or
either of them, resided. We cannot regard that instrument
as a chattel mortgage from DeBerard to Brackett; if it be, it
is a very left-handed one, to say the least. It is a mere sale
from the latter to the former, subject to a condition subsequent.
Besides, if it be regarded as in the nature of a chattel mortgage,
still the recording of it would not necessarily affix Talcott with
notice of its terms. He was not dealing with or in respect to
the property mentioned in it by taking or acquiring an interest
therein. We understand that the statute concerning such
mortgages even where acknowledged and recorded as therein
prescribed, was intended to make recording notice only to those
acquiring an interest in the goods and chattels mortgaged. We
are satisfied, from the evidence, that Talcott had no actual
notice of the terms of that sale until after he had altered his
position by the purchase of paper and type for his journal.
Brackett's conduct in distributing the circulars making the
unqualified statements that he had sold to DeBerard and
gone out of the paper, enforced by the statement to Talcott
that DeBerard's wife had $25,000, which would aid in carrying
on the paper, were well calculated to induce in Talcott's mind

Talcott v. Brackett.

the belief that such sale was made and was absolute; and acting upon that belief, to change his position as he did, by contracting for materials with which to publish his paper.    It is too plain for argument, that after all this, Brackett cannot be permitted to aver contrary to such admissions and acts, and now show that his sale was only conditional, without its resulting in a fraud upon, and injury to, Talcott, of such a character as that neither a court of equity or of law can or will sanction it.    A party must be regarded as intending the natural and probable consequences of all his deliberate acts.    This rule applies in both civil and criminal transactions.    The obvious and natural tendency of Brackett's conduct and declarations was to induce the belief that he had really and absolutely sold out all his interest in the paper to DeBerard.    The law will impute to him, therefore, the intention of superinducing such belief. This rule is involved in every properly framed formula of the doctrine of estoppel *in pais*, as in that of Lord Denman, in Pickard v. Sears, 6 Ad. & El. 469, the leading case in England on that subject.    " But the rule of law is clear that where one by his words or conduct willfully causes another to believe the existence of a certain state of things, and induces him to act on that belief, so as to alter his own previous position, the former is concluded from averring against the latter a different state of things as existing at the same time."    See, for the same doctrine, in effect, Stephens v. Baird, 9 Cow. 274; Welland Canal Co. v. Hathaway, 8 Wend. 480; First Presbyterian Church v. Williams, 9 Wend. 147; Dezell v. Odell, 3 Hill, 215.

In Dezell v. Odell, 3 Hill, 222, *supra*, Mr. Justice Bronson formulated the doctrine thus:  " 1.  That he has made an admission which is clearly inconsistent with the evidence he proposes to give, or the title or claim he proposes to set up.    2. That the other party has acted on the admission.    3. That he will be injured by allowing the truth of the admission to be disproved."

The same principles are firmly established in this State, though under formulas differing somewhat in different cases. Hefner v. Vandolah, 57 Ill. 520; Flower v. Elwood, 66 Ill. 438;

People v. Brown, 67 Ill. 435; Chandler v. White, 84 Ill. 435; Kinnear v. Mackey, 85 Ill. 96; Ball v. Hooten, 85 Ill. 159; Nichols v. Pool, 89 Ill. 491; Gray v. Agnew, Sept. Term, 1879, unreported.

Under the circumstances in evidence, and the doctrine recognized by these cases, we think Brackett is estopped from averring that he had not in fact sold his interest. The preliminary injunction, which by the final decree was made perpetual, treats the covenant in question as a general restraint upon Talcott, and prohibits him from publishing such a paper anywhere. We have shown that a contract of that general scope would be illegal and void. The covenant bound him not to do so within the limits of Cook county. It is that limitation as to place which might be the basis of reasonableness, and save the covenant from being held void. The injunction, being without that limitation, is manifestly erroneous.

For the reasons given the decree of the court below will be reversed and the cause remanded, with directions to the court below to enter a decree dismissing the bill.

Reversed and remanded.