## WAMPOL v. KOUNTZ *et ux.*

Parties who passively, willfully, and knowingly suffer another to purchase unoccupied land and expended money thereon under an honest, though erroneous, belief, based on the county records, that his vendor's title is perfect, and that the deed under which the vendor claims, is genuine and not a forgery, are estopped from asserting their title, as against the purchaser, after concealing their claim and the forgery for more than thirteen years for the purpose of shielding the vendor from the consequences of his crime.

(Opinion filed April 2, 1901.)

Appeal from circuit court, Bon Homme county. HON. E. G. SMITH, Judge.

Action by John Wampol against John T. Kountz and wife. From a judgment for plaintiff, defendants appeal. Affirmed.

The facts are stated in the opinion.

*W. T. Williams,* for appellants.

A party who insists upon the act of another as working an estoppel must show that he acted upon the same, and that it formed the inducement which led him at the time to do what he did. Malone on real property trials, 379.

The right of defendants to assert and enforce their rights of property and of possession must remain in tact until divested in some manner known to the law.

Was the silence of these defendants, under the facts of this case as found by the court, sufficient for this purpose?

Under what circumstances will silence—failure to speak or act—make out an estoppel to assert one's legal title to land?

Silence belongs to, and must be placed under the head of, equitable estoppel; and perhaps, in its operation, is the most restricted form of estoppel.

The mere silence of a party, without fraud, will not create an estoppel against the silent party, unless there was both, the opportunity and an imperative duty, to speak, or act. Bigelow on estoppel, 5th Ed. 594. N. Y. Rubber Co. v. Rothery, 107 N. Y. 310. Viele v. Judson, 82 N. Y. 32; Hamlin v. Sears, 82 N. Y. 301; Kingman v. Graham, 8 N. W. 184; George v. Swifford, 39 N. W. 807, (4). 2 Dembitz on Land Titles, 1023;

."And a person is never estopped by his silence except when *it* is his duty to speak." Matthews v. Stillwater Light Co., 65 N. W. 947; 5 Ballard on real property, Sec. 298; 4 Ballard on real property, Sec. 272.

*Elliott & Stillwell* for respondent.

The essential elements of an estoppel by conduct are: There must have been a concealment of material facts. Griffith v. Wright, 6 Colo. 248; Pittsubrg v. Danforth, 56 N. H. 272.

But silence when it is the duty of the party to speak, is equivalent to concealment, and the concealment must have been practiced with knowledge of the facts. Clinton v. Hadden, 50 Conn. 84; Davis v. Bagley, 50 Ga. 181; Gray v. Agnew, 95 Ill. 315; Lee v. Templeton, 73 Ill. 315; Bank v. Hazard, 30 N. Y. 226.

FULLER, P. J. From a decree in equity quieting in plaintiff the title to a farm of 160 acres the defendants appeal; and, to sustain the action of the trial court, respondent insists that the following uncontroverted facts forever estop appellants from claiming any right, title, or interest in and to the premises: Upon a sufficient showing of prior settlement, improvements, and cultivation of the tract, appellant Hattie E. Kountz, then Hattie E. Grant, made final proof thereof before the United States land office on the 25th day of October, 1872, and eight months thereafter received a patent, which was duly recorded in the office of the register of deeds. On the day final proof was made, appellants intermarried, and at no time since have either of them lived upon, cultivated, leased, or been in actual possession of the premises; and respondent and his grantor have always paid the annual taxes levied thereon. On the 31st day of October, 1872, D. P. Bradford, the father of Hattie E. Kountz, forged a quitclaim deed of the premises, fair upon its face, which purported to convey the title of his daughter Hattie to himself, and this deed was duly recorded on the 30th day of June, 1873. Relying upon such deed and the record thereof, D. W. Marsh, respondent's grantor, on the 3rd day of September, 1873, purchased the premises, in the utmost good faith, for the consideration of $750, taking a quitclaim deed from Daniel P. Bradford and Harriet, his wife, which deed was duly recorded on the 29th day of August, 1874; and for sixteen years continuously thereafter Marsh paid all the taxes as-

sessed against the property, and redeemed the same from a tax sale at which appellant John T, Kountz became the purchaser. In the year 1889, without actual knowledge of an adverse claim, and for the consideration of $1,700, respondent purchased and obtained a deed to the premises from D. W. Marsh, a resident of a foreign country, and ever since that time has occupied, improved, and cultivated the same, with the actual knowledge of appellants, who have always resided in the immediate neighborhood, and knew all that was being done upon the land from the time final proof was made in 1872 until the commencement of this suit in the year 1898. Though from the county records appellants both learned in the fall of 1885 that D. P. Bradford had forged the deed from his daughter to himself, and had sold and conveyed the premises to D. W. Marsh in 1873, they kept the matter a family secret for more than thirteen years after the acquisition of such knowledge, and until called upon to disclose the fact at the trial of this action. The avowed purpose of such willful delay in asserting their claim was to shield the father from the embarrassing consequences of his crime. They also knew that this previously unoccupied prairie land was leased for the years 1886 and 1887 by Mr. Torrence from D. W. Marsh, who, relying upon the public records and his deed from Bradford, had at the time innocently claimed to be the absolute owner of the premises for many years. Moreover, appellant John T. Kountz, who claims, by reason of an antenuptial contract made with Hattie E. Grant, to be the equitable owner of the premises, procured to himself a quitclaim deed from Bradford in 1892, and caused the same to be duly recorded, according to the advice of counsel; and his wife admits that, in consideration of certain money advanced pursuant to such contract, she promised and agreed to transfer the legal title to her husband. From the time of making final proof to the commencement of this action, appel-

lants in no manner asserted any proprietary rights or privileges, and never concerned themselves about the taxes legally assessed, which the respondent and his grantor have paid for a perior of 26 years; and, as previously noticed, they permitted Marsh to redeem from the tax sale at which the husband purchased the land, sat quietly by, with full knowledge of the forged deed, while the tenant of Marsh occupied and improved the premises for a term of years, and at the time of the sale to respondent, and during the nine years that he was occupying, bettering, and paying for the property, they did nothing to indicate that they had an interest or ever intended to assert an adverse claim, but, on the contrary, allowed him to remain in ignorance of that which they had known since 1885. Knowledge that some person held adversely to appellants prior to 1885 is imputable from the fact that they never paid any taxes, and never asserted or attempted to assert the slightest interest in the property; and the procurement of a deed from Bradford to appellant John T. Kountz, who had long previously allowed Marsh to redeem from a tax sale, is sufficient to justify the inference that Bradford's deed from his daughter was all it purported to be. Under the circumstances, appellants were bound to know that some innocent purchaser was likely to be injured by their silence; and in equity, if not as a matter of law, they are guilty of laches. Neither affirmative acts or words, nor silence maintained with the fraudulent intention to deceive, are in'dispensible elements of an equitable estoppel; and the authorities are substantially agreed upon the proposition that a party cannot with impunity seal his lips and remain in idleness for years, irresponsive to the incessant demands of justice and good conscience. Bank v. Hazard, 30 N. Y. 226; Landsdale v. Smith, 106 U. S. 391, 1 Sup. Ct. 350, 27 L. Ed. 219. This favored doctrine of the courts justifies the use of the word "conduct" in its broader meaning., to prevent

the assertion and enforcement of claims as against a person who, relying in good faith upon the silence or inactivity of another, has thereby and to his detriment been led to change his position with reference to the title of property either real or personal. Thus the term "conduct" when applied to a person in its relation to the modern doctrine of equitable estoppel, embraces not only ideas conveyed by words written or spoken and things actually done, but it includes the silence of such person and his omission to act, as well. Pom. Eq. Jur. 802-804. Appellants had ample time and opportunity to publish the truth, as duty demanded, and prevent the injury caused by their silence, maintained in order to protect their father while criminally holding himself out to the world as the former owner of the land. By the application of this doctrine that silence estops those whose duty it is to speak, one who passively, willfully, and knowingly suffers another to purchase and expend money on land under an honest though erroneous belief, based upon the county records, that his grantor's title is perfect, should not so long afterwards be permitted to exercise against such purchaser any previously existing but undisclosed right of ownership. Sweatman v. City of Deadwood, 9 S. D. 380, 69 N. W. 582; Hagan v. Ellis, 39 Fla. 463, 22 South. 727: Alexander v. Fishing Co., 90 Ky. 215, 14 S. W. 80; Hanner v. Moulton, 138 U. S. 486, 11 Sup. Ct. 408, 34 L. Ed. 1032; Merchant v. Woods (Minn.) 7 N. W. 826. The record discloses facts sufficient to justify the conclusion that appellants, for the purpose of protecting their father, elected to abandon their claim; and from such, courts of equity must withhould relief,, when productive of hardship and injustice to others. Neither the decisions relied upon by counsel for appellant, nor the points urged in his argument, justify interference with the action of the court below; and for the reasons above stated the judgment appealed from is affirmed.