# Kypadel Coal & Lumber Company, et al. v. Millard, et al.

(Decided June 15, 1915.)

## Appeal from Perry Circuit Court.

1. Quieting Title—Section 11, Kentucky Statutes.—Section 11, Kentucky Statutes, requires that the plaintiff in an action to quiet title must have both the legal title and possession of the land, but where the issues were joined, proof heard, and the case submitted upon the claim of possession by each party, the defendant waived any objection to the action on the ground that plaintiff was not in the actual possession of the land.

2. Quieting Title—Sheriff's Deed—Evidence.—Section 4030 of the Statutes makes a sheriff's deed for land sold for taxes prima facie evidence of the regularity of the sale, and of all prior proceedings, and prima facie evidence of title in the person to whom the deed has been executed, but it is not intended by this section to make such deeds conclusive evidence. If there was such irregularity in the assessment, or levy, or advertisement, or sale as to render the sale void, or if the taxpayer was not delinquent, proof of these facts would render the deed void.

3. Quieting Title—Sale of Land by Sheriff—Identity.—Aside from the auditor's deed the only evidence in the case as to the lands actually sold by the sheriff was the report of sale which he filed with and was recorded by the county court clerk. All other evidence was destroyed when the courthouse burned. This report described the land sold as situated in precinct No. 2, and named the nearest resident. The land claimed in the auditor's deed is situated in precinct No. 6, and is not near the resident named. The description given in the report is not sufficient to identify the land sold as that claimed in precinct No. 6, twenty miles away.

4. Quieting Title—Sheriff's Deed—Presumption—Description.—The law will presume in a tax sale, until the contrary is shown, that the sheriff advertised and sold the land described in the auditor's deed, and that the land was regularly assessed and the taxpayer was delinquent. It is also true that mere error or informality of description in any of these proceedings will not invalidate them, where the property can, with reasonable certainty be located from the description given, but where from the unimpeached report of the sheriff, it was established that the lands sold by the sheriff were situated in precinct No. 6, twenty miles from the lands in controversy, and not in precinct No. 2, and not near the resident named, as reported by the sheriff, the description given is not sufficient to locate the property as that lying in precinct No. 6.

5. Quieting Title—Possession—Limitation—Payment of Taxes.—Neither party has had actual possession of any of this land, and

the only question is one of title. Limitation or lapse of time will not perfect a record title in the absence of possession. Neither will payment of taxes nor lapse of time ripen a void deed although recorded into a fee title.

6. Quieting Title—What Not Incumbent Upon Owner to Do.—It is not incumbent upon the owner of land to sue for cancellation of a void deed recorded by an adverse claimant or to take steps to remove such a cloud from his title. While the law will afford a remedy, he is not compelled to go to that expense and his failure to do so cannot be considered laches, nor will it operate as an estoppel against him.

FORMAN & FORMAN for Kypadel Coal & Lumber Company.

J. P. HOBSON & SON for appellant Sears.

J. SMITH HAYS, JR., ELMER D. HAYS and J. SMITH HAYS for appellees.

OPINION OF THE COURT BY JUDGE NUNN—Affirming.

This action was instituted by the appellee to quiet title to a large tract of land in Perry County, and to cancel certain deeds of record under which the appellants claim the land. The lower court granted the prayer of his petition and adjudged appellee to be the owner of the land in question, and, also, cancelled and set aside appellants' deeds.

The plaintiff, appellee here, alleged that he was the owner and in possession. The defendants denied this and set up title in themselves, alleging that they were in possession. It may be stated, however, at the outstart, that the proof shows that neither of the parties have ever had anything more than constructive possession. Section 11 of Kentucky Statutes requires that plaintiff in such an action must have "both the legal title and possession of the land." But appellants have never insisted upon actual possession as a prerequisite to appellee's right to sue. Issue was joined on the claim of possession made by each. In view of the way in which issues were joined, proof heard, and the case submitted, appellants are deemed to have waived any objection to the action on the ground that plaintiff was not in the actual possession. Such suits have been maintained and the relief granted in many cases of constructive possession where the circumstances are exceptional. National Bank v. Licking Valley Co., 15 Ky. L. R., 211; Tucker v. With-

erby, 130 Ky., 269; Johnson v. Farris, 140 Ky., 435; Vance v. Gray, 142 Ky., 267.

The lands in controversy consist of 127 patents or tracts of 200 acres each, or a total of 25,400 acres, situated on Leatherwood and Mason Creeks, in precinct No. 6, of Perry County. F. A. Hull is the source of title of both claimants. Hull is a resident of Danberry, Connecticut, but prior to 1893, he came to Kentucky, and purchased a large body of coal and timber lands in Bell, Clay, Leslie, Perry Counties, and in what is now Knott County. In August, 1893, Hull executed a deed of assignment to J. M. Unthank, as trustee, a resident of Bell County, for the benefit of his creditors. This deed calls for about 70,000 acres.

In a suit to settle the assigned estate, the master commissioner was directed to sell 25,400 acres of the land situated in Perry County, and 27,400 acres of the land situated in Knott County. This sale was ordered in 1901, and made and confirmed in January, 1902. The appellee, Thomas C. Millard, was the purchaser at the price of $41,000, and paid the bid on the terms stipulated in the decree, and the proceeds were used in satisfaction of Hull's indebtedness.

Millard received his deed from the master commissioner in November, 1903, but it was not recorded in Perry County until March 31st, 1905. In the meantime, 35,000 acres of land in Perry County were assessed in the name of Unthank, as trustee, for taxes for the year 1894. The tax being unpaid, the sheriff of Perry County advertised the land assessed and sold it on November 12th, 1894. The sheriff bought it in for the State at the price of $147.75, the amount of the tax due the State. This sale was thereupon reported to the Auditor of the State. The sheriff included it in a report of 18 sales made by him that day, and the only description given in the report made to the Auditor is "35,000 acres of J. M. Unthank, of $35,000 value, for a tax of $147.75, for the tax year 1894."

In November, 1903, the revenue agent for the State at large reported to the Auditor that after due advertisement, he had offered for sale at the courthouse door in Hazard, Perry County, the lands assessed therein in the name of J. M. Unthank, trustee. His report of sale continues with a particular description of 103 separate patents, then follows 224 additional patent numbers. The

report recites that the land referred to and so sold by him amounts to 35,000 acres, more or less, and for more particular description reference is made to the original conveyance to Hull. The agent reports that Austin Fields was the purchaser at the price of $147.75, "being the amount due the State." On December 20th, 1903, the Auditor executed a deed of conveyance to Austin Field, in confirmance of the sale by the revenue agent, transferring to him all the lands mentioned in the sale report of the Auditor's agent. Austin Fields procured from the Hull deeds, recorded in the clerk's office, the patent numbers of the Hull land held by Unthank as trustee, and these were furnished to the Auditor's agent, and from them he made his sale and report to the Auditor, and the Auditor made his deed to Fields.

Austin Fields subsequently conveyed 97 patents, 19,400 acres, to Gamble; 7 patents, 1,400 acres, to R. F. Fields; 133 patents, 26,600 acres, to R. F. Fields. Gamble conveyed to R. F. Fields the 97 patents which he purchased of Austin Fields. July 5th, 1910, R. F. Fields conveyed all of the 237 patents, represented to contain 47,400 acres, to O. A. Sears. In September, 1912, Sears conveyed the land to the appellant, Kypadel Company, but representing the boundaries to contain 35,000 acres. These conveyances unquestionably embrace all of the 25,400 acres of the Millard land in Perry County. They also embrace several thousand acres of Millard's land in Knott County, and some other land in Leslie County. Since the sheriff of Perry County was without power to sell Knott County land to pay taxes due in Perry County, and since appellant's title must stand or fall on the validity of the sale by the Perry County sheriff, appellant's only claim the Perry County lands.

As between the parties, Millard has valid title to all the land he claims, unless he was divested of it by the sheriff's sale and the Auditor's deed made thereunder.

Millard insists that his land was not advertised or sold by the sheriff, and that no levy was made upon it; that the law requires a sale for taxes to be for the benefit of the State and county, and when the sheriff bids it in he must do it for both. Appellee says the land sold was bid in wholly for the State and its tax; that more taxes were claimed than due, and that more land was sold than was necessary.

Appellant says that the evidence does not sustain any of these contentions, and that Millard's claim to the land must fail, because the Auditor's deed not only divested him of title, but it is *prima facie* evidence of the regularity of the tax sale and all prior proceedings. Section 4030 of the Kentucky Statutes materially changes the rule of evidence as applied to tax titles. Theretofore it was incumbent upon one claiming under a tax deed to establish the assessment, delinquency, advertisement, sale and all other steps required to be taken by the revenue officers. Durrett v. Stewart, 88 Ky., 665, 11 S. W., 773; Jones v. Miracle, 93 Ky., 639, 21 S. W., 241; Magniar v. Henry, 84 Ky., 1, 4 Amer. St. Rep., 182.

But the rule now, as provided by Section 4030, Kentucky Statutes, is as follows:

"In all suits and controversies involving the titles of lands claimed or held under the deed executed by the sheriff in pursuance of the sale for taxes, the deed shall be *prima facie* evidence of the regularity of the sale and of all prior proceedings and title in the person to whom the deed has been executed."

Auditor's and sheriffs' deeds for tax sales are in the same category.

The effect of this statute was discussed in the case of Wildharber v. Lunkhebheimer, 128 Ky., 344; Husbands v. Pollvick, 128 Ky., 652; Kentucky Land Co. v. Simmons, 146 Ky., 588; Martin v. Kentucky Land Co., 146 Ky., 525.

In the Wildharber case the court said:

"The statute should not be construed strictly so as to defeat the purpose of the legislature in enacting it. It not only provides that the deed shall be *prima facie* evidence of the regularity of the sale and of all prior proceedings, but it also provides that it shall be *prima facie* evidence of title in the person to whom it has been executed. We must give some force to this provision of the statute, the manifest aim of which was to make the sheriff's deed *prima facie* evidence of title in the purchaser. As the title is the only thing in issue in this action, and as the sheriff's deed was read in evidence, he had made out a *prima facie* case, and the burden rested upon the plaintiffs to overcome the *prima facie* evidence of the purchaser's title, when his deed was read in evidence, he had made out a *prima facie* case, and the burden rested upon the plaintiffs to overcome the *prima facie* case which he had thus made out. Under this

statute a sheriff's deed only differs from a deed executed by the party himself in this: That the sheriff's deed is *prima facie* evidence, while the deed executed by the party himself is conclusive evidence until it is set aside; but subject to this distinction one deed when read in evidence is as effective to make out the defendants' case as the other.''

In the Martin case, *supra*, we said:

''Another objection urged is that the petition does not state facts showing that the necessary steps to constitute a valid sale for taxes were taken by the sheriff and revenue agent, but that the petition merely states legal conclusions. This contention, however, is without merit; for under the rule now in force in this State all that is necessary is for the purchaser to plead the deed of the Auditor, and this makes out a *prima facie* case, and places upon the owner of the property the burden of showing the irregularity of the proceedings leading up to the execution of the deed.''

It is not intended by this section, however, to make such deeds conclusive evidence. If, as a matter of fact, there was such irregularity in the assessment, or levy, or advertisement, or sale as to render the sale void, or if the taxpayer was not delinquent, these facts would render the deed void.

As said of Section 4030 in the Husbands case:

''It is a rule of evidence by which the burden of proof is shifted to the party who questions the verity of the officer's certificate.''

In Hamilton v. Steele, 117 S. W., 378, after discussing the old rule, the court said with reference to Section 4030:

''In other words, the statute, enacted since the opinions referred to were rendered, shifted the burden from the purchaser to the owner of the land; but it did not change the rule as to the requirements that, before a person can obtain a complete title under a tax sale, each legal step which the law requires in order to subject it to sale must be complied with.''

So, the appellants, claiming under the Auditor's deed, have made out a *prima facie* case and placed the burden upon the appellee to impeach the validity of the several steps which the law requires of revenue officers making sales of land for taxes. The assessment roll, levy, and advertisement are not in the case. The Perry

County courthouse and the sheriff's residence burned several years ago, and a great many of the public records were then destroyed. Such records as may have evidenced the assessment, levy, advertisement, or sale of the Unthank lands were lost, no doubt, in that way. Until their invalidity be affirmatively shown, the law will presume, under the circumstances of this case, that the land was properly assessed, and levied upon, advertised and sold. The Auditor's deed affirmed that these several steps were taken, and it is, therefore, *prima facie* evidence of their verity and regularity. But appellee introduced some record evidence, and the only evidence in the case on these questions, except the Auditor's deed. This evidence is the sheriff's report of sale filed in the county clerk's office, and, we think, it is sufficient to shift the burden. It demonstrates that the lands involved in this controversy were not, in fact, sold by the sheriff for taxes. The lands actually sold by the sheriff, D. Y. Combs, for taxes, are described in this report which he made to the clerk of the Perry County Court, and the report was recorded there. This record was not lost in the fire. It shows that the sheriff reported that on the 12th day of November, 1894, he sold, to pay taxes for that year, 35,000 acres of land, and same was sold in the name of J. M. Unthank, trustee. The property was described as being situated in precinct No. 2, and Prest. Campbell was named as the nearest resident. This is the only evidence of the sale except the Auditor's deed. This report of a sale of land in precinct No. 2, adjacent to Prest. Campbell, was certified to the Auditor, and it is upon its strength that the Auditor's agent made the sale to Fields, and in it must be found a description sufficient to enable the Auditor to identify and describe the land in precinct No. 6, which he attempted to convey to Fields, or else Fields' title to land in precinct No. 6 must fail. The evidence does not make it clear whether Prest. Campbell lived in precinct No. 2, but it is established beyond question that he did not live in precinct No. 6, and that J. M. Unthank, as trustee, or otherwise, did not have title to any land in precinct No. 2. The sheriff's report says he sold 35,000 acres of land situated in precinct No. 2, but those claiming by virtue of that sale are now asserting title to land in precinct No. 6, which is 20 miles away. This report of sale is put in evidence by way of a certificate of the county court clerk,

verifying it as a true copy of the report as it appears of record in Perry County.

Section 4164 of the Kentucky Statutes has reference to copies of sheriff reports of tax sales, redemptions, etc., and provides:

"Copies of the reports aforesaid, certified by the county clerk, shall be evidence of the facts stated in them in any of the courts of this Commonwealth."

Appellants admit the inaccuracies of the description given in the report of sale, but contend that the assessment, levy, advertisement, and sale are not thereby impeached, for, as they argue, in the absence of the original documents, the presumption goes that they were correct, and that the mistake was made by the county clerk in recording the sheriff's report. They argue that it must be presumed that the assessor and the sheriff performed their duties, and, therefore, that they did actually assess, levy upon, advertise and sell the land in precinct No. 6, and that the insertion of the figure 2 in the record of the sheriff's report "may be a mistake of the county clerk in copying the report." The law will presume, until the contrary is shown, that the assessor and the sheriff did their duty, and that neither made a mistake, but the same presumption goes in favor of the clerk. We must assume also that he correctly copied the sheriff's report, and that the copy shows every fact reported by the sheriff. Under these circumstances the case begins and ends with the certified copy of the sheriff's report of sale. The description given in the report must be sufficient to identify the land in question before appellee can be divested of title.

As we have already seen, such land as the purchaser at the sheriff's sale may be entitled to, is located in precinct No. 2. But appellants rely upon Section 4056 of the Kentucky Statutes, which is as follows:

"But no error or informality in the description or location of the property, or in the name of the owner or party assessed, shall invalidate the assessment if the property can with reasonable certainty be located *from the description given;* and in case of such error and informality, the collector may receive the taxes and by his receipt correct such error or informality."

Appellants in attempting to justify their claim to the land in precinct No. 6, in the face of the Fields purchase of land in precinct No. 2, prove that Unthank, as

trustee, owned no other land in Perry County, nor was
any other assessed to him, in any capacity.  They argue
that an affirmance of the case would be suffering a mere
error or informality in the description or location of the
land to overthrow the Auditor's deed, because, as they
say, the clerk made a clerical error in writing the figure
2 instead of the figure 6, when he recorded the sheriff's
report of sale.  But there is no evidence that the clerk
made any error at all, and the presumptions are all to
the contrary.  It will hardly do to say that a conveyance
of land with no description other than the owner, and
that it is situated in one precinct and adjacent to a cer-
tain resident, is a sufficient description to enable one to
identify it as located in another precinct, 20 miles away,
and nowhere near the resident named.  This, in our
opinion, is appellant's case.  If they are entitled to any
land it is in precinct No. 2.  Since this litigation con-
cerns land 20 miles away in precinct No. 6, their claim
must be rejected.  The law will presume, as argued by
appellants, at least, until the contrary is shown, that the
sheriff advertised and sold the land described in the
Auditor's deed, and that the same land was regularly
assessed, and that the taxpayer was a delinquent.  It is
also true that mere error or informality of description
in any of these proceedings will not invalidate them, pro-
vided the property can, with reasonable certainty, be
located from the "description given."  But that rule
cannot be applied in this case, where, from his unim-
peached report, it is established that the lands which the
sheriff sold were situated 20 miles away from the lands
in controversy, in precinct No. 2, and not in precinct No.
6, and not near the resident named, and where an at-
tempt to locate the lands sold as being in precinct No.
6 would not be "from the description given," but in
direct conflict with it.  If the "description given" is not
sufficient to locate or identify the property, then the
"description given" may be supplemented by oral or
other evidence in harmony with the "description given,"
in order that the property may be located, but such other
evidence must be in aid of and consistent with the "de-
scription given."

Appellants contend that a general description in an
assessment is valid.  This is unquestionably true.  Our
system of land titles renders impracticable the use of a
detailed description for purposes of assessment.  This

impracticability is recognized by the law which prescribes forms for assessment. They call for the name of the owner, the number of acres, the precinct in which located, nearest resident and value. The sheriff in selling for taxes, may use the same sort of description. But if the law requires little of the sheriff, there is all the more reason why that little should be complied with. As the law requires that the precinct be given in which the land is located, that precinct should be named. Appellants cite many cases where evidence *aliunde* has been received in aid of the description given. For instance, in Ellis v. Deadman, 4 Bibb., 466, the property sold was described as "a lot he bought of me in the town of Versailles." Proof was heard which established the location of the lot in Versailles which he sold.

In Henderson v. Perkins, 94 Ky., 207, the property was described "my home place and store house."

In Bates v. Harris, 144 Ky., 399, the property was described "her Muddy Creek farm."

In Whitworth v. Pool, 96 S. W., 880, the land was described "our farm on which we reside on the Texas road containing 90 acres, more or less."

Commonwealth v. Louisville, 47 S. W., 865, was an assessment case of the property described as "wharf property."

In all of these cases oral evidence was received in aid of the written description, but in no case did the evidence contradict or conflict with the description given.

Mosley v. Hamilton, 136 Ky., 680, 124 S. W., 894, involved an assessment, tax sale and auditor's deed, and the controversy was over the description of the land assessed, which was as follows: "Martin L. Hamilton 124 acres, (nearest resident) Al May, (value) $1,028, 31st precinct." The Auditor's deed practically followed the description in the assessment and it was contended that no title passed. But it was shown that the only land that Martin L. Hamilton owned was the 124 acres, situated in 31st precinct with Al May as the nearest resident. The court upheld the sale because "the case falls within the rule that that is certain which may be made certain." But if it had been shown that Al May was not a resident of 31st precinct, and that Martin L. Hamilton did not own any land in 31st precinct, then the description given could not have been made certain by showing that Hamilton did own some land in some other remote

precinct of the county. In the matter of description the recent case of Hogue v. Gibson, 162 Ky., 813, is in point. Hogue claimed title to land in Beaver precinct, under an assessment and sale of land in Barren Fork precinct. The court, in denying his claim, said: "Here the property was not only assessed, sold, and reported in the wrong name, but in every stage of the proceeding the property was described as being located in the wrong precinct. To uphold a tax sale there must be a substantial compliance with the statute."

The record shows that the sale was made for the State tax, $147.75, and bought in for the State at that price. It is also shown that the amount of the county tax at that time was $210, and that the sheriff did not sell it for county taxes, nor did the State purchase it in behalf of the county. Some time after R. F. Fields had taken the Auditor's deed he voluntarily paid to the county $210, the amount of its taxes. But having already reached the conclusion that the sheriff's purported sale of land in precinct No. 2 did not pass title to land in precinct No. 6, it will be unnecessary to consider the question as to whether the failure to sell for the county also was a fatal defect, or whether the subsequent payment of the county taxes cured it.

Appellants insist that appellee, Millard, has been guilty of such inexcusable delay in ascertaining his rights as amounts to laches; that limitation has run against him; that he is a chronic tax dodger; and that his case is void of equities. They call attention to the fact that the tax sale was made by the sheriff in 1894, and that the Auditor's deed was made in 1903, and then recorded, and this suit to quiet title was not brought until January, 1913, more than 18 years after the tax sale, and nearly ten years after the Auditor's sale. They say that if any mistake was made in the sheriff's report of sale, that the appellee should have discovered it within five years from the date it was reported and recorded, or, at most, within five years after the recording of the Auditor's deed to Fields. They say that the appellant, Kypadel Company, before it invested in the property, employed lawyers to abstract the title, and they failed to discover the commissioner's deed to Millard because it was improperly indexed by the county court clerk, and that no lis pendens notice was ever filed with reference to the suit in Bell County wherein the commissioner conveyed

the land to Millard. The alleged error in indexing consisted in this: The index showed the deed from Hull to Unthank, as trustee. The commissioner's deed was indexed from Hull, et al., to Millard. Appellant says it should have been from Unthank to Millard. Be this as it may, the fault was not Millard's. He had nothing to do with the indexing, and he had no duties under the law in that regard. Millard was also a resident of Danberry, Connecticut. Millard and his vendors had complete chain of record title to this land over the whole period of time referred to. Millard never heard of any of the conveyances under which appellants claim until November, 1912, shortly before this suit was filed. Even then the appellants had never done anything more than to record their deeds, which might serve to give Millard notice of their claim of title. They never attempted any control over the property; never took any steps towards occupying, clearing, or mining. In the absence of possession, we do not see any room for a question of limitation. Both parties are claiming under record title from a common source, and the only question is superiority. Limitation or lapse of time does not perfect a defective record title in the absence of possession. If the situation of these parties had continued 10, 15, or 20 years longer, and the question should then arise as now, as to which title of record is superior, a plea of limitation would not avail for either party against the other.

Appellants show that they have regularly paid the taxes on the land. Appellee makes the same claim, although he is unable to show tax receipts for more than a third of the time. Anyhow, one cannot acquire a title to the land of another by paying the taxes on it, nor will a claim of title under a void deed, although recorded, ripen into a fee by lapse of time, nor will limitations run against the owner of record in favor of a claimant not in possession, nor is it incumbent upon the owner to sue for cancellation of a void deed, or to take steps to remove a cloud upon his title, nor need he make investigation of the record in order to correct any mistake in the sheriff's report of sale of his land for taxes. If he desires to have the cloud removed the law affords a remedy, but he is not compelled to go to that expense, and his failure to do so cannot be considered laches, nor will it operate as an estoppel against him. A mere claim of

title, even of record, unaccompanied by an adverse hold-ing, will not start the statute.

National Bank v. Licking Valley Mining Co., 15 Ky. L. R., 211, was very similar to this. The Licking Company, under an Auditor's deed, claimed the land of Durant. The land had been purchased by the Commonwealth in a tax sale. At the time of the sale, and when the tax accrued, title to the land was in the National Bank, and the bank never had any notice of the sale. In 1882 the Auditor sold it to the Licking Company. Afterwards the bank filed its petition "in the nature of a bill *quia timet*," and alleged "that the tax deed is a cloud upon his title and asks that it be removed, etc." Among other defenses, the plea of limitation was interposed. The court in discussing that plea said:

"The land of appellant was sold without notice to it of the proceeding, when no levy had been made to satisfy the lien of the State upon it, and neither the five years statute nor any other liimtation can be plead, except such limitation as arises from an adverse holding for 15 years."

The court does, however, note the fact that even if it could be said that limitation had begun to run with the recording of the Auditor's deed, still the suit was brought five years from that date.

The appellants having a void deed to the land in question, cannot complain that a *lis pendens* notice was not filed with reference to the Bell County suit for settlement of the assigned estate. An innocent purchaser from Hull or from Unthank, or from their vendees, might properly set up this plea. But the rights and interests of the appellants are in no way affected by the failure to file the notice. If there were any unpaid taxes on appellee's land in precinct No. 6, the sheriff had the right to sell same for the taxes, notwithstanding a *lis pendens* notice. The only benefit which appellants claim they could have received from a *lis pendens* notice was information of the fact that Unthank had record title, or that he had been divested of it by decretal sale. The deed to Unthank, however, was of record in the clerk's office of the Perry County Court, and it is not claimed that the appellants were without knowledge of it. While Millard's deed was not recorded until about one year after its execution, yet that fact could not have misled appellants to their prejudice. If the tax sale of land in

precinct No. 2 had been in the name of Millard as owner, instead of Unthank, appellants would not have any stronger claim to the land in precinct No. 6.

For the reasons indicated, the judgment is affirmed.