(No. 30589.—

GUSTAF ANDERSON, Appellee, *vs.* VILLAGE HOMEBUILDERS, INC., Appellant.

*Opinion filed September 24, 1948.*

John E. Erickson, of Chicago, for appellee.

Sheehan and Egan (Roy J. Egan, of counsel,) both of Chicago, for appellant.

Mr. Justice Daily delivered the opinion of the court:

The appellee, Gustaf Anderson, on January 22, 1947, filed a complaint in the superior court of Cook County against Village Homebuilders, Inc., a corporation, the appellant, to set aside certain deeds which appellee alleged were clouds on his title to a parcel of real estate located in the city of Chicago. After a hearing, the chancellor entered a decree granting the relief prayed. A freehold being involved, appellant has appealed directly to this court.

The facts developed in the pleadings and proof show that the real estate involved is a vacant, unimproved lot, which has not been occupied by either party. Appellee obtained title to the premises by warranty deed from one John Berquist, dated March 5, 1898, recorded March 7, 1898. The next conveyance appearing on record is a war-

ranty deed dated May 31, 1898, recorded June 3, 1898, purporting to be from "Gustaf Anderson, unmarried" to one Addie S. Munroe. Appellee denies that he executed such a deed, and it is this deed and those emanating from it which he seeks to set aside. The property record next shows that Addie S. Munroe and her husband conveyed the premises to Louis L. Schorsch, by quitclaim deed dated March 20, 1928, recorded March 20, 1928. In October, 1931, Schorsch and his wife caused a series of deeds to be executed which placed title in Schorsch and his associates in a realty company, as trustees. When the realty company was incorporated under the name of Village Home-builders, Inc., the trustees, on June 1, 1936, executed a special warranty deed conveying title to the corporation, the appellant here. All of these transactions were duly recorded.

Appellee, Anderson, in the meantime, is shown to have paid taxes and special assessments on the premises for twenty of the years from 1902 through 1927, inclusive. In January, 1928, appellee had his title examined by the Chicago Title & Trust Company, preparatory to the purchase of an owner's guarantee policy. It was then that he first became aware of the deed dated May 31, 1898, purporting to be from Gustaf Anderson, unmarried, to Addie S. Munroe. Appellee then secured a quitclaim deed to the premises from Addie S. Munroe and her spouse, which was dated April 30, 1928, and filed for record March 13, 1930. It is to be noted that this quitclaim deed to appellee was dated ten days after the Munroes had purportedly conveyed the premises to Louis L. Schorsch. On July 15, 1930, appellee filed an affidavit for record in which he charged that the deed of 1898 to Addie S. Munroe was a forgery, and that the deed from Munroe to Schorsch was a cloud on his title. On July 22, 1930, appellee's attorney wrote a letter to Louis L. Schorsch, (the original being introduced into evidence at the trial,) calling his attention

to the fact that the purported deed to Addie S. Munroe was a forgery, and asking Schorsch to execute a quitclaim deed to appellee. Nothing further appears to have been done by the parties until 1940 when appellant paid back taxes and special assessments for the years 1929 to 1939, inclusive. Appellee then filed this suit January 22, 1947.

Appellee appeared as a witness in his own behalf and testified that he had purchased the premises by warranty deed from one John Berquist on March 5, 1898, for a consideration of $500; that he paid the taxes and special assessments from that date through 1927, and that he first became aware of the purported deed to Addie S. Munroe on January 13, 1928, when he received a title opinion on the property. He denied that he had ever executed a deed conveying the premises to Addie S. Munroe and disclaimed ever knowing her or Sam Rosenbaum, the notary before whom the purported deed was acknowledged. In addition he stated that he had never authorized the execution of such a deed on his behalf. The original deed purporting to be from appellee to Addie S. Munroe was not introduced into evidence by either party, nor were Addie S. Munroe or Sam Rosenbaum produced as witnesses. Appellee further testified that on learning of the presence of the Munroe deed on record, acting on the advice of and through his counsel, he procured a quitclaim deed to the premises from Addie S. Munroe and her spouse on April 30, 1928; filed an affidavit for record on July 16, 1930, in which he stated that the deed of May 31, 1898, from Gustaf Anderson to Addie S. Munroe was a forgery and that the deed of Addie S. Munroe and her spouse to Louis L. Schorsch under date of February 29, 1928, was a cloud on his title; and that on July 22, 1930, he notified Louis L. Schorsch of the forgery and requested a quitclaim deed.

The only other witness appearing for appellee was Louis L. Schorsch, who was called under the statute as an adverse witness. He testified to the receipt of a deed from

Addie S. Munroe and told of the subsequent conveyances which put title in the appellant, the Village Homebuilders, Inc., a corporation, of which the witness was an officer. He admitted finding in his files the letter written by counsel for appellee on July 22, 1930, giving notice of the forgery and requesting a quitclaim deed, but stated that he could not remember its receipt, or the circumstances under which it was received. He further stated that at the time he purchased the premises from Addie S. Munroe, he made no investigation of the title or tax records of the premises. The testimony of these two witnesses, along with the introduction of the appropriate deeds, letters, tax and special assessment receipts constituted appellee's proof.

Louis L. Schorsch also appeared as the first, and only, witness for the defense. He testified to the receipt of a deed to the premises from Addie S. Munroe and her husband on March 20, 1928, for which he paid a consideration of $50. He stated that he did not pay the consideration directly to the Munroes, but paid it to Catino Brothers to pay to them. Catino Brothers were described as an organization retained by the Schorsch Realty Co. to purchase real estate for them. The witness further testified that in 1940 appellant had paid back taxes and some special assessments on the premises for the years 1929 through 1939. This, with the supporting documentary evidence, constituted appellant's defense. The trial court held that appellee was not guilty of *laches* and found that the purported deed from Gustaf Anderson to Addie S. Munroe was a forgery; that the series of deeds which conveyed title from Addie S. Munroe to appellant were clouds on appellee's title to the premises, and ordered that they be delivered up, cancelled and held for naught. It was further decreed that appellee had a fee-simple title free and clear of any right, claim or interest of appellant.

In seeking reversal of this decree, appellant here advances four contentions: (1) that there was insufficient

evidence to support the decree; (2) that the decree is against the manifest weight of the evidence; (3) that the court erred in not finding appellee guilty of *laches,* and (4) that the decree is contrary to law. In support of its position that the evidence was insufficient to support the decree, appellant relies upon those cases wherein the rule has been laid down that evidence to impeach a certificate of acknowledgment on a deed must be clear and convincing and should do more than produce a mere preponderance against the integrity of the certificate. *Gritten* v. *Dickerson,* 202 Ill. 372; *Strauch* v. *Hathaway,* 101 Ill. 11.

In this case there is but little direct evidence in support of the proposition that the alleged deed from Gustaf Anderson to Addie S. Munroe was a forgery. Appellee testified that he did not execute, or authorize the execution of such a deed. The original deed was not introduced into evidence, nor was appellant able to produce it on being given notice to do so. Neither were Addie S. Munroe nor the notary who acknowledged the deed called as witnesses. Such deficiencies in the evidence are understandable in view of the fact that the questioned deed was executed and recorded in excess of forty years before the trial of this cause. Circumstantial evidence in corroboration of appellee's denial strongly supports the allegation that the deed was a forgery. It is uncontroverted that appellee paid taxes and special assessments on the premises from 1898 to 1929 when the cloud on his title was first discovered. It is inconceivable that one who had divested himself of his title would continue to pay taxes and special assessments on the premises for so long a period. His actions of placing notice on record and of informing the then titleholder by letter that the deed to Addie S. Munroe was a forgery are further consistent with his claim that he had never relinquished or transferred his title. These facts cast doubt upon the validity of the deed itself and in our opinion are sufficient to support the decree.

Appellant's next contention is that the decree is against the manifest weight of the evidence. As against the evidence introduced by appellee, outlined above, Louis L. Schorsch, appellant's predecessor in title and an officer of the appellant corporation, testified that he had received a deed to the premises from Addie S. Munroe through the agency of Catino Brothers; that he had paid a consideration of $50, and that he had not checked property or tax records, none of which in any way refutes the proof offered by appellee. In view of this, and of our opinion that appellee's evidence was sufficient to support the finding of the trial court, we also conclude that the finding that the deed to Addie S. Munroe was a forgery is not against the manifest weight of the evidence.

It is next urged by appellant that it has acquired title to the premises by virtue of its continuous possession under a deed, and payment of taxes for a period of seven years as provided in section 6 of the Limitations Act. (Ill. Rev. Stat. 1947, chap. 83, par. 6.) It does not appear that this defense was pleaded in the court below. While a defense not made in the court below will not be considered on review, courts take judicial notice of public acts without the necessity of pleading them specially, and the defense of the statute is available to appellant. (*People* v. *Schlaeger,* 391 Ill. 314.) While appellant urges that it has acquired title under section 6 of the Limitations Act, it is section 7 of the act, (Ill. Rev. Stat. 1947, chap. 83, par. 7,) which applies to vacant, unoccupied lands, and thus to this case. The record shows that the first tax payment made by appellant was on August 16, 1940, at which time it paid back taxes for the years 1929 to 1939, inclusive, and then with knowledge that its title was colorable. This proceeding was filed by appellee on January 22, 1947, less than a full seven years after the first payment of taxes. It has long been the rule that the construction of this section of the Limitation Act is, not that seven years must elapse be-

tween the date of the first payment of taxes and the date of the last payment, but that all taxes must be paid for seven successive years, and that seven years must elapse from the date of the first payment, when the statute begins to run, before the commencement of a suit, or possession taken of the land. (*McConnell* v. *Konepel,* 46 Ill. 519; *Lyman* v. *Smilie,* 87 Ill. 259; *Duck Island Club* v. *Bexstead,* 174 Ill. 435; *White* v. *Harris,* 206 Ill. 584.) Here there was not only a failure to pay taxes for seven successive years, but also appellee filed his action on January 22, 1947, which is within seven years of the first payment of taxes by appellant on August 16, 1940, thus tolling the statute of limitations. The seven-year period begins with the first payment of taxes after acquirement of color of title. (*White* v. *Harris,* 206 Ill. 584; *Blair* v. *Johnson,* 215 Ill. 552.) This contention is without merit.

The last ground urged by appellant is that appellee was guilty of *laches* in not commencing this action within a reasonable time after his discovery, on January 13, 1928, of the deed to Addie S. Munroe. The proof shows that immediately after such discovery appellee secured a quitclaim deed from the Munroes, which was of little effect due to the previous conveyance of Munroe to Schorsch. Later, appellee caused notice to be filed on the record in which he stated that the deed of 1898 to Munroe was a forgery, and that the deed from Munroe to Schorsch was a cloud on his title. He also notified Louis L. Schorsch that the deed under which Munroe had claimed was a forgery, and requested a quitclaim deed. Within a reasonable time after discovery it is apparent then that the appellee took every step possible, short of a judicial proceeding, to assert his title to the premises. As pointed out in *Chandler* v. *White,* 84 Ill. 435, the law does not require that the owner of land shall, within any particular period, commence proceedings in law or in equity, against a forger of title to his land, to vindicate his good title against the

fraudulent claim of the forger or one claiming under him, but rather, he may bide his time and trust to the strength of his title.

In 1931 Schorsch transferred his title to the premises to his business associates as trustees. In 1936 the said trustees transferred title to the appellant, of which Schorsch was an officer. Both transactions were made with full knowledge of appellee's claims. From 1930 till 1940 neither Schorsch, the trustees, nor the appellant, did anything to assert their ownership of the land, over the claims of appellee, and during such period it is obvious that appellee relied on the strength of his own title. In 1940 appellant paid taxes on the premises, thus raising the possibility that its title under color of right might ripen into a valid title with payment of taxes for seven successive years. Such possibility was forestalled, however, by appellee's timely action in filing this suit. We do not agree that appellee's claim had become stale at the time this proceeding was commenced, nor from his conduct since his discovery of the forged deed can he be deemed to have been guilty of *laches*.

The decree of the superior court is affirmed.

*Decree affirmed.*