**Fannie B. MARTIN, Appellant,**

v.

**William CARTER et al., Appellees.**

**No. 13273.**

District of Columbia Court of Appeals.

Argued Dec. 6, 1978.

Decided May 14, 1979.

Kurt Berlin, Washington, D. C., with whom David Z. Sadoff, Washington, D. C., was on briefs, for appellant.

Thomas Penfield Jackson, Washington, D. C., for appellees William and Marie Carter, Colonial Mortgage Service Co., C. W. Blomquist, and George A. Resta, Trustees.

Charles H. Acker, III, Washington, D. C., for appellee Jack Spicer Real Estate, Inc. Leonard C. Collins, Washington, D. C., was on brief, for appellee Jack Spicer Real Estate, Inc.

Before NEWMAN, Chief Judge, and KELLY and KERN, Associate Judges.

KELLY, Associate Judge:

This appeal is from an order in a suit to quiet title to certain real property granting appellees' motion for summary judgment on grounds of laches. The question presented is whether it was an unreasonable delay for appellant to let twenty-three months pass between the time she found a forged contract to convey her property and the time she filed suit, given that she notified the buyer of the property as soon as she learned of the forgery. When we read the record in the light most favorable to the non-moving party, as we must on summary judgment, *Adickes v. S. H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *International Underwriters, Inc. v. Boyle,* D.C.App., 365 A.2d 779, 782 (1976), we conclude that it was error to grant judgment for appellee and reverse.

Appellant's cause of action arises from the sale and conveyance of a single-family

residential property in Northwest Washington, D.C., which appellant had held in joint tenancy with Lester Fletcher. Mr. Fletcher sold and conveyed that property to appellee Jack Spicer Real Estate, Inc. and Spicer subsequently sold and conveyed the property to appellees William and Marie Carter. Appellant claims she had no knowledge of the sale and conveyance of the property by Fletcher and that the purported signature on the deed is a forgery. Appellant's amended complaint sought to cancel the forged deed, to quiet title of the property, to order delivery to her of a deed of trust recorded against the property, and to secure a declaration that appellant was sole owner in fee simple.

The trial judge found that laches barred the action against the Carters and with that suit barred, the action against Spicer could no longer survive. He based his application of equitable laches on oral findings that appellant had notice of her claim two years before bringing suit, that rights of innocent third parties (the Carters) had intervened, and that a material witness (Mr. Fletcher) had died. The trial judge mentioned "actual knowledge of the rights of innocent third parties;" however, the record does not support a finding that appellant had knowledge of the Carters as specific purchasers. (*See* note 1 *infra*.)

Appellant argues (1) that hers was properly an action at law for ejectment, D.C. Code 1973, § 16–1101, and that application of the equitable doctrine of laches was therefore inappropriate, and (2) that laches, if relevant, was improperly applied in this case. We agree with appellant's second argument, and accordingly, need not reach the first.

I

The affidavits and records before the trial court, read in the light most favorable to appellant, indicate that appellant and Fletcher, in 1962, took title of the property and assumed liability for an earlier deed of trust. Appellant made all payments on the first deed of trust and it was satisfied in full and released in June of 1973. Fletcher assumed all responsibility for routine management and maintenance of the property. On October 29, 1973, a contract for sale of the property to Jack Spicer Real Estate, Inc. for $12,000 was executed. Martin and Fletcher were the purported vendors of the property. The purported signatures of both appeared on a deed dated December 4, 1973, conveying the property to Spicer. Appellant actually signed neither the contract nor the deed. They were executed by Fletcher with the assistance of a title clerk who worked for an auto dealership which Fletcher managed and owned in partnership with appellant and who forged appellant's signature. In February 1974, Spicer contracted to sell the property to William and Marie Carter for $26,200.

◼ In April 1974, appellant, while reviewing records at the auto dealership, discovered the forged sales contract. She also noticed either a "For Sale" or a "Sold" sign on the property.[1] Appellant immediately confronted Fletcher with her discovery and he admitted the forgery. Appellant then, still in April of 1974, telephoned Spicer. She identified herself as a joint owner of the property and stated that she had never signed a conveyance of that property. Spicer denied any knowledge of her name and denied her any interest in the property. In July and August, appellant obtained an official copy of the forged deed. Fletcher then admitted that the clerk had forged appellant's signature on it. Appellant consulted the attorney who represented their joint auto dealership who advised her to take legal action to protect her interests. For financial reasons and because of a crisis

---

1. The trial court's finding that this sign was first noticed in April (rather than in June, as now contended) is clearly supported by a fair *reading of* appellant's deposition. Appellant also mentioned seeing "some people" in the house. She had given Fletcher money to pay workmen for improvements to the house. The Carters did not take possession until August. Thus we see no basis for any inference that she had notice of the Carters, specifically, as interested in the property.

with the auto dealership, appellant did not then pursue the issue.[2]

On August 16, 1974, pursuant to the February contract, Spicer conveyed the property in fee simple to the Carters as tenants by the entirety. Nothing in the record suggests that the Carters had any knowledge of appellant's interests in the property. Between the time they took possession and the time the trial court ruled on the motion, the Carters had spent more than $6,000 on improvements to the property.

In the fall of 1975, sometime near the end of October, appellant asked a lawyer to pursue her interest in the residential property. On November 10, 1975, Fletcher died after a hospital stay of "a couple of days." On March 22, 1976, appellant filed the present suit, seeking to have this property returned to her. Procedural matters, including the filing of a cross-claim by the Carters against Spicer, followed. Then, on January 31, 1978, the trial judge, after reviewing the affidavits and deposition, and hearing arguments of all parties, granted the summary judgment now being appealed.

## II

■ Laches, which bars stale claims asserted by the plaintiff, comes into play when two prerequisites have been met: the defendant must have been prejudiced by plaintiff's delay, and plaintiff's delay must have been unreasonable. *King v. Kitchen Magic,* D.C.App., 391 A.2d 1184, 1187–88 (1978); *Van Bourg v. Nitze,* 128 U.S.App. D.C. 301, 388 F.2d 557 (1967). In this case, the trial judge focused on the degree of prejudice appellees-defendants suffered through appellant's delay in this case. As an equitable remedy there can be few specific rules governing the application of laches and great respect is due the weighing of the equities made by the trial judge who

applies the rule. *Gardner v. Panama Railroad Co.,* 342 U.S. 29, 72 S.Ct. 12, 96 L.Ed. 31 (1951). We agree with his finding that there was some prejudice, although we believe that, to a significant extent that prejudice can be remedied.

■■ In considering the second requirement of laches, the trial judge seems to have assumed that unexcused delay, of whatever length, was per se unreasonable. Absent a duty to act, however, a delay in filing suit is not unreasonable, *Hinesly v. Davidson,* 335 So.2d 380 (Ala.1976), and here, appellant did give prompt notice to Spicer, the only claimant of whom she had specific knowledge. The trial judge may have thought that appellant had a duty to warn all prospective purchasers against the flaws in the title that Spicer was offering to the world, but there is no such duty. *Wiser v. Lawler,* 189 U.S. 260, 271–72, 23 S.Ct. 624, 47 L.Ed. 802 (1903); *Mosley v. Magnolia Petroleum Co.,* 45 N.M. 230, 114 P.2d 740 (1941). And when the application of laches turns upon an interpretation of the law, appellate review need not defer to the judgment of the trial court. *American University Park Citizens Ass'n v. Burka,* D.C.App., 400 A.2d 737, 741 (1979).

■ The parties to this suit have fully discussed the prejudice suffered by appellees through the passage of time before suit. We are sympathetic to their position, but believe that the trial court proceeding in equity and in the creation of its remedy can significantly ameliorate this potential for prejudice. The court, for example, may find it appropriate to protect the Carters by creating an equitable lien on the property, reflecting the improvements that the Carters have made, including their services as caretakers of the residence. In Mr. Fletcher's absence, the testimony of handwriting experts, of the notary public who notarized the deed, and of the clerk-accomplice, sub-

---

2. Poverty may excuse delay in filing suit if there is a clear showing of that poverty and of diligent efforts to overcome financial barriers.

*See Powell v. Zuckert,* 125 U.S.App.D.C. 55, 57–59, 366 F.2d 634, 636–38 (1966). No such showing can be inferred from this record.

ject to cross-examination, may be presented to a fact finder who can also consider his unavailability. And the reliance interest of the Carters may be protected by pursuit of their cross-claim against Spicer for failure to notify them of appellant's claims against the title he offered to them. Thus, the prejudice here, while real, is not overwhelming.

It is significant that the most important change here—the purchase of this property by the innocent Carters—is not attributable to delay by appellant. The Spicer-Carter contract had been made well before appellant had any notice of the fraud, and the actual conveyance to the Carters took place a mere four months after its discovery, and despite her clear warning to Spicer of her claim. To hold this transfer against appellant, in the face of her notice to Spicer, would be to allow the notified beneficiaries of a forgery to insulate their gains merely by rushing to pass title to an unwarned third party.

■ Against this prejudice to appellees— partly curable, partly unattributable to appellant, and partly very real—we must set the policy that the risk of forged deeds falls on the purchaser, 7 Thompson *Real Property* § 3233 (repl. ed. 1962), and the possibility of unfair prejudice to a defrauded plaintiff. The stable placement of the risks of forgery allows both buyers and sellers of real estate to plan intelligently and, for example, to protect themselves by purchase of title insurance from companies able to calculate where losses will fall. The risk of prejudice to plaintiffs is the basis for the second requirement of laches—that the delay be unreasonable. And that is why laches

arises only when a duty to act, whether created by statute, act, or appearance exists.

Appellant has argued that "since a landowner is under no duty to sue to quiet title arising from a forged deed, a *fortiori,* he cannot unreasonably delay bringing such action and give rise to laches thereby." *Anderson v. Village Homebuilders, Inc.,* 401 Ill. 60, 81 N.E.2d 430 (1948). In essence, she claims that a forged deed can never be protected by laches. We cannot accept that doctrine in its absolute sense, for there may be cases where inaction can rise to the level of abandonment,[3] or where failure to warn known prospective buyers may approach fraud. *Cf. Unity Banking and Savings Co. v. Bettman,* 217 U.S. 127, 30 S.Ct. 488, 54 L.Ed. 695 (1910). Neither of those dangers, however, appears on this record.

■ Appellees have cited three cases in which laches have barred suits for realty.[4] None of them conflict with the analysis we suggest. In each, the period of delay approached that of adverse possession, and in none of them did the previous possessors act as appellant did here and give immediate notice to all claiming parties of whom they had specific notice.[5] This immediate notice to the one party of whom she was specifically aware clearly distinguishes this case from *Wampol v. Kount,* 14 S.D. 334, 85 N.W. 595 (1901), strongly relied on by appellee. There the court was persuaded not only by time, but also by a belief that plaintiffs had delayed action in order to protect a family member who was the forger. Here, as in *Anderson, supra,* appellant immediately complained to Fletcher and Spicer, all the parties to the contract that

---

**3.** In measuring this, the 15-year period for adverse possession may offer helpful, if not binding, guidance. D.C.Code 1973, § 12–301(1).

**4.** *Dunavant v. Evans,* 191 Okl. 208, 127 P.2d 190 (1942) (laches after a delay of 14 years and 10 months); *Ramantanin v. Poulos,* 240 S.C. 13, 124 S.E.2d 611 (1962) (12 years); *Wampol v. Kountz,* 14 S.D. 334, 85 N.W. 595 (1901) (13 years).

**5.** After delays, short of those cited by appellant, and yet generally far longer than the delay here, courts have refused to apply laches to suits for real property. *Anderson v. Village Homebuilders, Inc., supra* (2½ years delay in recording affidavit of forgery with registrar, 19 years in filing suit); *Cox v. Watkins,* 149 Kan. 209, 87 P.2d 243 (1939) (4 years); *Kypadel Coal & Lumber Co. v. Millard,* 165 Ky. 432, 177 S.W. 270 (1915) (2 months); *Mosley v. Magnolia Petroleum Co., supra* (7 years).

she had discovered. Absent a showing that she had specific knowledge of the Carters, her duty went no further.

In *Mosley, supra,* the Supreme Court of New Mexico dealt with a case in which major oil field investments had been made by, and years of rent collected by, an innocent third party relying on a forged but recorded deed. Despite a seven-year delay between discovery of the forgery and the filing of suit, the court asked the same question we face here:

> Did the plaintiffs owe a duty to every person (that is the public) to protect them individually and collectively (known or unknown) against the hidden defects in the record of the Burke deed, which required them to take some affirmative action, such as the filing of this or a like suit, or by otherwise giving record notice of their claim under penalty of losing their property? . . . [*Mosley v. Magnolia Petroleum Co., supra* 114 P.2d at 751.]

The New Mexico court answered this question in the negative. It is unfair to force the innocent property holder to institute litigation or to stand guard over her deed at the Registrar's. Her duty is only to give notice to those claimants of whom she is or should be aware. She gave such notice to Spicer. Nothing in this record shows that she owed such notice to the Carters. Therefore, her delay in filing suit was not unreasonable, and the judgment of the trial court must, accordingly, be

*Reversed.*