17036

MRS. W. C. SEAGLE and IRMA S. HALL, Respondents, v.
W. FRANK MONTGOMERY, RICHARD B. BOYKIN,
and BARBARA H. BOYKIN, Appellants

(88 S. E. (2d) 357)

*Messrs. C. T. Graydon,* of Columbia, and *Frank E. Rector,* and *Murchison & West,* of Camden, *for Appellants,*

*Messrs. J. Clator Arrants,* of Camden, and *William Elliott,* of Columbia, *for Respondents,*

July 20, 1955.

LEGGE, Justice.

Respondents brought this action to quiet title to a small triangular tract of wooded land, described in the complaint and in the quitclaim deed hereinafter mentioned as containing one-third of an acre, more or less, but found upon survey in the cause to contain 1.887 acres, lying between their property on the west and property of appellant Montgomery on the east. They allege that they and the late W. C. Seagle, who was the husband of the respondent Mrs. Seagle and the father of the respondent Mrs. Hall, have owned the tract in question and have held it in their possession for more than forty years; that about 1920 W. C. Seagle and Allen J. Boykin, who then owned the Montgomery tract, established an agreed line and erected a wire fence thereon, the line being the eastern boundary of the disputed tract; that the appellant Montgomery claims title by virtue of a quitclaim deed to him from the appellants Richard B. Boykin and Barbara H. Boykin dated March 8, 1952, which deed they allege constitutes a cloud upon their title; and they pray that they be declared the owners of the tract in question, that Montgomery be adjudged to have no interest

in it, and that the quitclaim deed be set aside and declared void. In their answer, appellants deny respondents' claim of ownership and possession and deny the allegations as to the establishment of the line. The case was referred to a special referee to take the testimony and report it to the court without findings of fact or conclusions of law; and upon the testimony so taken and the several plats hereinafter mentioned the matter was heard before the Honorable E. H. Henderson, Presiding Judge, from whose decree this appeal is taken.

The Seagle property was acquired by W. C. Seagle from S. F. Brasington in 1907, and was described in the deed as containing 93.6 acres. In February, 1908, it was surveyed for W. C. Seagle by W. R. Pinckney, whose plat dated February 17, 1908, shows the area is 123 acres, more or less. Upon the death of Mr. Seagle in 1938, the property passed by descent to the respondents.

The Montgomery property was part of a larger tract of 209 acres that was conveyed in 1938 by Elizabeth C. Boykin to E. C. Pearce, Jr., and in 1944 by the Master for Kershaw County to David R. Williams, who in 1946 conveyed 204 acres of it to Barbara H. Boykin and Richard B. Boykin. The two last mentioned conveyed 40.1 acres to the appellant Montgomery by deed dated August 2, 1950; and under date March 8, 1952, they executed a quitclaim deed conveying to him a triangular lot containing one-third of an acre, more or less, the deed reciting that "the above described lot of land · is the westernmost corner of that tract of land conveyed to the grantors herein by deed of David R. Williams of date April 2, 1948 (*sic*), and recorded in the office of the Clerk of Court for Kershaw County in Book D-B, at page 559, and was intended to have been conveyed to the grantee herein by the conveyance first above mentioned".

In addition to the Pinckney plat before referred to, there were in evidence the following plats, all showing the line between the Seagle property and the Montgomery property:

A plat of 285 acres, part of the lands of the estate of Col. James Chestnut, made by S. M. Boyle under date March 30, 1869;

A plat made by J. T. Gettys under date December 23, 1937, showing two tracts formerly the property of A. J. Boykin, one of them being the 209-acre tract that was later, in 1938, conveyed to E. C. Pearce, Jr.;

A plat of the two last mentioned tracts made in 1938 by Joseph Palmer, the legend-indicating that as to the 209-acre tract it was traced from the Gettys plat of December 23, 1937;

A plat of the 40.1 acre Montgomery tract and a larger tract, also owned by Montgomery, adjoining it to the south, made by M. C. O'Cain under date June 10, 1950;

A plat of the western portion of the 40.1-acre Montgomery tract, made by M. C. O'Cain under date August 14, 1951; and

A plat of the disputed area, shown as containing 1.887 acres, made by F. H. Murray under date January 2, 1953, pursuant to order of the circuit court in the instant case.

The Boyle Plat, which was later followed by Gettys and Palmer in their surveys, and also the Pinckney plat, indicated that the disputed area lay within the Montgomery lands. The Murray plat, which began with a corner established by reference to the Boyle and Palmer plats, also showed the area in question as part of the Montgomery property. The two plats by O'Cain showed it as part of the Seagle lands.

The conveyance by Richard B. Boykin and Barbara H. Boykin to Montgomery dated August 2, 1950, to which we have referred, describes the land conveyed as "containing forty and one-tenth (40.1) acres, more or less, more particularly shown and described on a plat of the premises by M. C. O'Cain, surveyor, dated July 25th, 1950, and recorded in the office of the Clerk of Court for Kershaw County". The reference to July 25, 1950, as the date of the

plat is not explained in the testimony. Mr. O'Cain testified that he made two plats, both at Mr. Montgomery's request; the one by which Mr. Montgomery bought the property, and a later one made on August 14, 1951. The latter is in evidence, marked "Plaintiffs' Exhibit C"; the O'Cain plat of June 10, 1950, is marked "Plaintiffs' Exhibit B", but except for this notation on it the record does not show its introduction in evidence, or that there was anything introduced in evidence as "Plaintiffs' Exhibit B".

The learned circuit judge found as a matter of fact that continuously since 1908 the disputed area had been protected by a substantial enclosure, there being a wire fence along the eastern line that was later replaced by a new fence; and he held that respondents had acquired title to the disputed area by adverse possession. He also found as a fact that many years ago the boundary line between the Seagle lands and the Boykin (now Montgomery) lands had been agreed upon and established by the then owners, at the place where the fence was located.

As stated in their brief, appellants' twelve exceptions raise three questions, namely:

1. Did the plaintiffs-respondents establish title to the property in question by adverse possession?

2. Did the circuit judge commit error in finding that the boundary line as contended by the plaintiffs-respondents was established by agreement many years ago and that the agreement was binding on the present parties?

3. Should the plat drawn by Mr. Murray, the court-appointed surveyor, be approved and ownership of the property established in accordance therewith?

The issue of title by adverse possession being one of law, our factual review of it is limited to determination of whether there was any evidence reasonably sustaining the judgment of the lower court. *Fogle v. Void*, 223 S. C. 83, 74 S. E. (2d) 358; *Phillips v. DuBose*, 223 S. C. 224, 75 S. E. (2d) 56.

Mrs. Seagle testified that ever since her husband acquired the property the small triangular area in question has been fenced on the east line, where it abuts on the Montgomery property; that it is a wooded area, and during the forty-five years since its purchase by her husband he and she have gotten wood and brush and straw from it and have cut a few trees for stacking hay; and that their tenants have used it. She recalled that about 1947, when the Boykin house on the adjoining tract had burned, Richard Boykin had discussed with her the location of the line between their properties, and that she had told him that the fence was the line, and he had made no question of it.

Her daughter, Mrs. Hall, testified that for at least forty years there has been a fence on the east line of the little tract in question; and that during that period the Seagles had cut haystack poles and had gathered straw there and had permitted their tenants to locate their pig pens there.

Mr. E. M. Workman, Mrs. Seagle's brother, who for some fifteen years had worked on the Seagle property, although he lived some miles away, testified that in 1936 there was an old fence on the east line of the area now in dispute, and that it was generally known throughout the community that this little wooded tract was part of the Seagle property; and that he had seen straw hauled from it and had himself cut two or three stack poles from it.

Mr. E. C. Pearce, Jr., who bought the Montgomery tract from Elizabeth C. (Mrs. Allen) Boykin in 1938, testified that at that time there was an old fence on the east line of the small tract approximately where the new fence now is; that in connection with his purchase he was to give a mortgage to the Federal Land Bank of Columbia, which required a plat; that he went with Mr. Gettys, the surveyor, to see Mrs. Seagle about the location of the division line, Mr. Seagle being ill at the time, and that Mrs. Seagle told them to "put the corner at or near a pine tree which stood right on the corner of the little patch of woods", which they did;

that some two or three months later she told him that she had made an error and that the fence on the east line of the wooded area was the division line between the properties; and that, although he did not have the plat or the mortgage changed, he accepted the fence as the line. As to the interview with Mrs. Seagle and the subsequent agreement with her as to the line, Mr. Pearce's testimony was corroborated by Mrs. Seagle.

Mr. Gettys, a witness for the appellants, testified that, according to his recollection, in making his plat he ran the division line according to information given him by Mr. Pearce.

Mr. M. C. O'Cain testified that he first surveyed the east line about 1947 for Dixie (Richard) Boykin; that there was an old wire fence on the line at that time; that he later made the two surveys, in 1950 and 1951, at Mr. Montgomery's request, and furnished him with the plats showing the line as contended for by respondents; and that Mr. Montgomery not only made no question of the line, but put a new fence on it.

Pab Boykin, a colored man sixty years old, testified that he had known the Montgomery property for forty years or more; that in 1916 Mr. Allen Boykin put a fence on the east line of the little tract in question, and that, after Mr. Montgomery had bought his property, Mr. Montgomery had the witness tear down the old fence and put up the new one on the same line.

Lucy Wade, a colored woman who had worked for Mr. Allen Boykin when he owned the Montgomery tract, testified that the fence on the east line of the area in question had been put there forty or more years ago; and that Mr. Boykin "worked" his land up to the fence, and so did Mr. Pearce when he owned the Montgomery tract, but that they never went beyond it.

Charlotte Salmond, a colored woman who had lived for twenty years on the Montgomery tract when it was owned

by Mr. Allen Boykin, testified that the old fence was on the line when she was a child, and that it was considered the line between the Boykin and the Seagle properties.

Section 10-2425 of the 1952 Code provides as follows:

"For the purpose of constituting an adverse possession by a person claiming title not founded upon a written instrument or a judgment or decree, land shall be deemed to have been possessed in the following cases only:

"(1) When it has been protected by a substantial enclosure; and

"(2) When it has been usually cultivated or improved."

Granting for the purposes of the issue now under consideration that, as appellants contend, respondents have no color of title to the disputed area, the testimony to which we have referred is amply sufficient to warrant the finding that the disputed area has been "protected by a substantial enclosure" since 1908. That the fence may have been erected by the adjoining landowner does not deprive respondents of the benefit of the statute; on the contrary, such fact would emphasize his recognition of their claim. Judge Henderson's conclusion that respondents have acquired title by adverse possession is reasonably supported by the evidence, and must, therefore, be affirmed.

Appellants' first question having been answered in the affirmative, discussion of the others becomes unnecessary.

Affirmed.

BAKER, C. J., and STUKES, TAYLOR and OXNER, JJ., concur.