17565

Wallace H. PRIVETTE, Respondent, v. Joyce Gandy GARRISON et al., Appellants, Mary Gandy BAIRD, Individually and as Adm'x, Respondent, v. Wallace Henry PRIVETTE et al., Appellants.

(110 S. E. (2d) 17)

*John Gregg McMaster, Esq.,* of Columbia, *for Appellants,*

*D. Carl Cook, Esq.,* of Hartsville, *for Respondent,*

August 10, 1959.

LEGGE, Justice.

Wallace H. Privette and May Gandy were married on July 29, 1931. She died on January 31, 1958. Her will, dated October 19, 1948, contained the following provisions:

1. By Item II she devised and bequeathed "my home place where I now live, containing three hundred ninety-six and 41/100 (396.41) acres, more or less, purchased by me from The Prudential Insurance Company of America, and all livestock, farm machinery and equipment used or held for use in the cultivation of said land to my husband, Wallace Henry Privette, for and during the term of his life and after his death to my nieces, Joyce Gandy Garrison, and Mary Livingston Gandy (daughters of my brother Simmons A. Gandy), Margaret Gandy Zeigler and Harriet L. Gandy (daughters of my brother F. LeRoy Gandy) and Annie May Covington Hicks (daughter of my sister, Leila Gandy Covington), to be divided and apportioned among them so that each of the four nieces first named shall take a one-sixth (1/6) part and the said Annie May Covington Hicks shall take a two-sixths (2/6) part; provided that my said husband shall be entitled to the possession and use of the said livestock, farm machinery and equipment immediately upon my death and not at the conclusion of the administration of my estate, and that neither he nor his estate shall be required to replace any of the said livestock, farm machinery or equipment consumed or rendered worthless in the cultivation of said land, or that may have otherwise been disposed of by him."

2. By Item IV she gave and bequeathed "the rest, residue and remainder of my personal property of every nature, kind and description to my said five (5) nieces, Joyce Gandy Garrison, Mary Livingston Gandy, Margaret Gandy Zeigler, Harriet L. Gandy and Annie May Covington Hicks, to be divided among them in accordance with a written memorandum bearing even date herewith and signed by me, which I shall leave with this will."

These testamentary provisions gave rise to the two cases now under appeal, as follows:

1. An action by Wallace H. Privette against the administratrix c. t. a. and the five nieces named in the will. In his complaint Mr. Privette alleged: that prior to October

15, 1931, the real property purportedly devised under Item II had been owned by him and his father; that during the depression of 1930 they had been obliged to mortgage their respective portions of it to The Prudential Insurance Company of America; that these mortgages, having become in default, had been foreclosed, and at the foreclosure sale the property had been purchased by the mortgagee; that thereafter Prudential had agreed to convey the said property to the plaintiff for $11,396.11, of which ten per cent. was to be paid at the time of the conveyance and the balance, to be secured by mortgage, over a period of twenty years; that since there were at that time many judgments and other obligations outstanding against him, the plaintiff and his wife had entered into an agreement whereby he would pay for the property and would take title in her name, and that she would hold the title in trust for him and convey the property to him upon his demand; that in reliance upon that agreement the plaintiff had authorized Prudential to convey the property to his wife, which was done on October 15, 1931, at which time plaintiff made the cash payment of $1,139.61; that thereafter plaintiff paid the mortgage obligation in full; that at all times subsequent to said conveyance the plaintiff had full control and possession of the premises, maintained there his home and conducted there his farming operations, paid all taxes, and expended large sums for repairs and improvements; and that the attempted testamentary disposition of the property by his wife was in repudiation of the agreement before mentioned. He prayed that he be adjudged the owner of the property, that a deed conveying it to him be executed under order of the court, and that the defendants be barred of any right, title or interest in or to the said premises.

The defendants Margaret Gandy Zeigler, Harriet L. Gandy (then Lyon), and Annie May Covington Hicks answered, denying the allegations of the complaint other than those relating to matters of record, and pleading estoppel and laches. No answer on the part of the other defendants appears in the record before us.

2. An action by Mary Gandy Baird (formerly Livingston), individually and as administratrix c. t. a., seeking construction of Item IV of the will and instruction as to disposition of the personal property therein referred to, the complaint alleging that the memorandum mentioned in Item IV had never been found. Joined as defendants in this action were all persons who would have been Mrs. Privette's heirs and distributees had she died intestate, namely: her four nieces other than the plaintiff, her two nephews and her widower, Wallace H. Privette. Upon information and belief the plaintiff alleged that the personal property in question consisted of:

Balance of $1,238.82 in checking account in Bank of Hartsville;

Balance of $2,402.41 in checking account in Citizens Bank of Darlington;

Note and mortgage of real estate given by S. J. Jernigan to the testatrix, the exact amount of the obligation being as yet undertermined;

"All of the jewelry, silver, china, furniture and household goods, furnishings and equipment and personal effects owned by the testatrix at the time of her death, the nature and extent of which is now being investigated by the plaintiff and a detailed list of which will be submitted to the court during the progress of this case."

One 1950 Cadillac automobile.

The defendant Wallace H. Privette answered, alleging that he was the absolute owner and in possession of all the livestock, farm machinery, and equipment located on the premises in question and referred to in Mrs. Privette's will; that he was also the absolute owner and in possession of the Cadillac automobile and all of the jewelry, silver, china, furniture and household goods, furnishings and equipment located on the premises and recently listed by the administratrix; and that the other property mentioned in the complaint should be distributed as intestate property.

The defendants Margaret Gandy Zeigler, Harriet Gandy Lyon and Annie May Covington Hicks answered, admitting that the written memorandum referred to in Item IV was not attached to the will, and alleging that the personal property bequeathed under said item did not descend as intestate property but passed under the will to the five nieces of the testatrix named in Item IV, share and share alike. No answer on the part of any of the other defendants appears in the record before us.

Both actions were referred to the Master for Darlington County to take the testimony; and on the testimony so taken and reported they were heard before the Honorable James Hugh McFaddin, Judge of the Third Judicial Circuit. In the case first mentioned he held that the real property involved belonged to Mr. Privette in fee simple, as *cestui* of a resulting trust. In the second, he held, by his order of November 14, 1958, that there was no intestacy as to the property mentioned in Item IV of the will, and that the bank accounts and the note and mortgage described in their answers had vested in Mrs. Privette's five nieces in equal shares; and he reserved decision as to the ownership of other personal property. Thereafter, by order dated January 21, 1959, he held: that certain enumerated articles of personal property had been owned solely by Mrs. Privette and passed under her will to her five nieces in equal shares; that certain others belonged to Mr. Privette individually; that certain others were owned by Mr. and Mrs. Privette in equal proportions; and that, regardless of ownership, Mr. Privette was entitled to the possession and use of all livestock, farm machinery and equipment during his life, without accountability on his part or on the part of his estate for any such property as during his life may have been consumed or worn out or disposed of, and that any of such property as might remain at the time of his death should be divided equally among Mrs. Privette's five nieces.

From the order in the first case and the order of January 21, 1959, in the second, three of the nieces (Mrs. Zeigler,

Mrs. Lyon and Mrs. Hicks) have appealed. Although the appeals have been presented under a single transcript of record and but one brief has been filed for the appellants and one for the respondent, Wallace H. Privette, the two cases involve different issues and must be considered separately. We shall first discuss that which concerns the real estate devised under Item II of the will.

Mr. J. P. McNeal, formerly loan correspondent and attorney for Prudential in Florence, S. C., testified on behalf of the plaintiff as follows:

In 1931 he handled for Prudential the foreclosure of two mortgages held by it, one executed by Wallace H. Privette covering 173.41 acres, the other by his father, J. H. Privette, covering an adjoining tract of 223 acres, the two tracts together constituting the property here involved; and as the result of the foreclosures Prudential acquired title to both tracts. It was the policy of that company to sell farm property acquired by it through foreclosure, offering it first to the former owners, and allowing payment of the purchase price to be made ten per cent in cash and the balance, secured by mortgage, over a period of twenty years. Mr. Wallace H. Privette having indicated a desire to purchase both properties, Mr. McNeal called upon him and Mrs. Privette and told Mr. Privette that the company would not approve a sale to him on the terms before mentioned, because numerous judgments against him were outstanding of record. After some discussion, Mr. and Mrs. Privette agreed that the property should be conveyed to her and that when Mr. Privette should get his judgments out of the way and could take title she would give him a deed to it whenever he asked for it. Mr. McNeal then drew up the offer of purchase and Mrs. Privette signed it; and a check for the cash payment, amounting to "around eleven hundred dollars" was given to Mr. McNeal. Whether it was given by Mr. Privette or by Mrs. Privette the witness did not recall.

Mr. Privette testified that in order to make the initial payment to Prudential Mrs. Privette sold a thousand-dollar

government bond that she owned and gave him the proceeds, which he deposited to his account, enabling him to draw and give to Mr. McNeal the required check for "eleven hundred and something dollars". He testified also that later, when he "got on his feet", he gave Mrs. Privette a bond of like amount in replacement of the one that she had sold, and from time to time gave her others; that ever since their marriage all of his bank accounts were kept in their joint names and were subject to withdrawals by either; that Mrs. Privette also had two bank accounts in her own name; and that she assisted him in the operation of the farm and sold various farm products such as chickens, eggs, butter and flowers, but that he looked after the main crops. He testified that he made the annual payments on the mortgage obligation to Prudential until 1942, when he paid the balance in full; and that he paid all taxes on the property. He also testified that all judgments against him had been paid and cleared up for twenty years prior to Mrs. Privette's death, but that he had never requested her to convey the property to him.

For the defendants, Mrs. Baird testified that after Mrs. Privette's death she attended a conference in the office of the lawyer who had drawn Mrs. Privette's will; that Mr. Privette was also present; that the will was then read by the lawyer; and that Mr. Privette thereupon said, in effect, that he could not complain of Mrs. Privette's disposition of the property, because she had been so good to him. And Mrs. Lyons testified that at a later conference in the same office, when the matter of taxes on the property was being discussed, Mr. Privette stated that his wife had paid the taxes every year.

While a resulting trust may be proven by parol, the evidence to establish it must be clear, definite and convincing. *Rogers v. Rogers,* 52 S. C. 388, 29 S. E. 812. And where the claim to such a trust is based upon payment of the purchase money or some definite portion of it by the beneficiary, such payment must be clearly and unmistakably shown to have been so made at or before the time of

the purchase. *Hutto v. Hutto,* 187 S. C. 36, 196 S. E. 369. But an express trust in realty, as distinguished from a resulting trust, may not be proven by parol. *Bell v. Edwards,* 78 S. C. 490, 59 S. E. 535.

In the case at bar we find it unnecessary to determine whether the evidence, taken as a whole, meets the rigid test required for proof of a resulting trust, or whether it points rather to an express trust upon condition, for proof of which parol evidence is not acceptable. For the record here leads us to conclude that if, under the circumstances of the purchase from Prudential in 1931, Mr. Privette had any right to assert ownership of the property against his wife, he is now barred by his laches from asserting it. He offers no explanation, other than his own neglect, for his failure to assert such right during the twenty years that elapsed between the clearance of all judgments against him and the death of his wife. All of the evidence shows that their married life was a congenial and happy one. There is no suggestion of disagreement or discord that might have impelled her to do him injustice. What, then, was the situation in 1948 when she made her will? Was there in existence at that time an agreement on her part to convey the property to him? Was the will in repudiation of that agreement, or was it in recognition or fulfilment of some other agreement between them?

"The determination of the question of laches proceeds in the light of the circumstances of each case, taking into consideration among other things whether the delay has worked injury, prejudice or disadvantage to one of the parties. *Wallace v. Timmons,* 232 S. C. 311, 101 S. E. (2d) 844. It is impossible to lay down any inflexible rule. The Court is vested with a wide discretion. *Ham v. Flowers,* 214 S. C. 212, 51 S. E. (2d) 753, 7 A. L. R. (2d) 1124." *Jannino v. Jannino,* S. C., 108 S. E. (2d) 572, 578.

It was said in *Babb v. Sullivan,* 43 S. C. 436, 21 S. E. 277, 279, that "laches connotes not only undue lapse of time, but also negligence, and opportunity to have acted sooner,

and all three factors must be satisfactorily shown before the bar in equity is complete." These factors are indisputably present here. In addition, because of the death of Mrs. Privette, the other party to the claimed transaction, appellants have been placed at great disadvantage in defending their position. The difficulty, if not impossibility, in these circumstances, of arriving at a safe and certain conclusion as to the truth of the matter in controversy, and thus doing justice between the parties, calls for the application of this equitable doctrine. *Main v. Muncaster,* 171 S. C. 269, 172 S. E. 222; *Jannino v. Jannino, supra.*

"While the rule requires for its support no element of estoppel, but is founded on public policy, the fact that the delay has tended to defeat defendant's power to prove his right is an additional reason for its application; and relief is more readily denied in case of the death of a party to the transaction than in other cases, since his death usually presents difficulties in procuring evidence and conducting the defense other than those arising from the mere loss of his testimony. To bring the rule into operation, it is not necessary that the court should be convinced that the original claim was unjust or has been satisfied; it is sufficient if the court believes that under the circumstances it is too late to ascertain the merits of the controversy." 30 C. J. S. Equity § 119, p. 542.

We turn now to the case that is concerned with the disposition of personal property under Item IV of Mrs. Privette's will.

By his order of November 14, 1958, before mentioned, from which no appeal was taken, the trial judge construed Item IV as effecting the bequest to Mrs. Privette's five nieces, in equal shares, of all personal property owned by the testatrix at the time of her death and referred to in that item, and, specifically, of the two bank accounts and the note and mortgage described in their answer. Decision was reserved as to the contested issue of ownership of other personal property, and was later made, as before stated, by the order of January 21, 1959, now under appeal.

· Appellants' single exception charges "that his honor erred in holding that Wallace Henry Privette was the owner of certain items of the personal property, in that the only reasonable inference that can be drawn from the testimony is that Wallace Henry Privette intended and conveyed all of the personalty items to Mrs. Privette as a gift." Upon argument of the appeal, they filed with this court a memorandum from which it appears that of the items found by the trial judge to be the property of Mr. Privette they claim only the following: "refrigerators, freezer, air conditioners, electric stove, gas heater, washing machine, electric hot water heater, vacuum cleaner."

The issue of ownership with which the order of January 21, 1959, was concerned was one of law; and our factual review of that order is therefore limited to determination of whether there was any evidence to support it. *Phillips v. DuBose,* 223 S. C. 224, 75 S. E. (2d) 56; *Seagle v. Montgomery,* 227 S. C. 436, 88 S. E. (2d) 357.

The trial judge, frankly admitting the impossibility of accurate determination, from the record before him, of the ownership of each item listed in the inventory of personal property, nevertheless undertook the judgment of Solomon and proceeded to make distribution, item by item, allocating some specific articles to Mrs. Privette's estate and some to Mr. Privette individually, and adjudging that the others had been owned at the time of her death by her and her husband in common, in equal shares. The division thus made appears to have been satisfactory to both ·sides, except as to the few items which appellants, in their memorandum before mentioned, now claim were owned by Mrs. Privette individually.

Appellants offered no evidence on the issue of ownership; and, except for the two bank accounts, the Jernigan note and mortgage, the automobile registered in Mrs. Privette's name, and four mules, eight cows, and some unitemized farm machinery returned for taxation in her name, the only evidence ·of ownership, as to personal property, was the testimony of

Mr. Privette. That testimony was in very general terms, and is, to us, unsatisfying; but we cannot say that it afforded no evidentiary support for the judgment with regard to the items here in question. That judgment must, therefore be affirmed.

In the case of *Privette v. Garrison et al.* the judgment is reversed; in the case of *Baird v. Privette et al.* the judgment is affirmed.

STUKES, C. J., and TAYLOR, OXNER and MOSS, JJ., concur.