17883

Alexander J. RAMANTANIN, Appellant, v. Valencia M. POULOS, individually and as Administratrix of the Estate of Daphne Ramantanin, Aspasia Lasker, and Valencia M. Poulos, as Administratrix, C. T. A. D. B. N. of the Estate of John Ramantanin, Respondents.

(124 S. E. (2d) 611)

14

*Messrs. James J. Raman* and *Claude R. Dunbar,* of Spartanburg, *for Appellant,*

*Messrs. Lyles & Lyles,* of Spartanburg, *for Respondents,*

*Messrs. James J. Raman* and *Claude R. Dunbar, for Appellant, in Reply,*

March 9, 1962.

LEWIS, Justice.

The issues in this case concern the claim of the plaintiff, Alexander Ramantanin, to ownership of a house and

lot, title to which was formerly held by his father, John. Ramantanin. At the time of his death, on February 20, 1959, John Ramantanin held title to a house and lot in Spartanburg, South Carolina, referred to in the record as the Asheville Highway property. Under the residuary clause of his will, this property was devised to his wife, Daphne. She died on April 5, 1959 and title to the house and lot in question passed to the defendant, Valencia M. Poulos, as the sole heir at law of Daphne. The defendant Poulos is now the holder of record title to the property.

The plaintiff Alexander Ramantanin and the defendant Valencia M. Poulos are children, respectively, of John and Daphne Ramantanin by prior marriages, the plaintiff being the son of John and the defendant Poulos being the daughter and only child of Daphne. No children were born to the marriage of John and Daphne.

On May 11, 1955 John Ramantanin executed a mortgage over the foregoing property to the defendants Poulos and Aspasia Lasker, which is still outstanding of record. The defendant Lasker is made a party to this action as one of the holders of such mortgage. The main controversy here, however, is between the plaintiff and the defendant Poulos and concerns the ownership of the above mentioned house and lot.

The plaintiff seeks in this action a decree of the Court adjudging him to be the sole owner of the foregoing property by virtue of the alleged investment therein of funds derived from the sale of other real estate in which he owned an interest. On March 31, 1936 a house and lot, located in Spartanburg, South Carolina, on North Church Street, was conveyed to John Ramantanin for life and at his death to the plaintiff. In April, 1945 John Ramantanin and the plaintiff decided to sell the North Church Street property for the sum of $15,000.00 and on or about April 20, 1945 entered into the following agreement, relative to the handling of the proceeds of such sale:

"NOW THEREFORE know all men by these presents that we, the undersigned parties hereby agree and bind ourselves to the following handling and disposing of the net proceeds of sale to be so received by us.

"The entire amount of said net balance shall first be deposited in the Citizens and Southern National Bank of South Carolina to the joint credit of John Ramantanin and Alexander Ramantanin. No check shall be paid thereon except by a pen signature of both parties. The entire corpus of this estate of funds is to be regarded as belonging to John Ramantanin for life with remainder to Alexander Ramantanin. It is to be regarded as realty and not as personalty.

"In the event of the death of John Ramantanin prior to the reinvestment of the monies, the entire amount thereof shall belong to Alexander Ramantanin under the provision of the trust deed recorded in Book 8-U at Page 160, and in accordance with the consent decree in Judgment Roll No. 30820. As soon hereafter as practicable, the money is to be reinvested in real estate, which is agreed upon and suitable to both of the parties; and it is expressly understood that such real estate shall belong to John Ramantanin for and during the term of his natural life only, with remainder in fee to Alexander Ramantanin, his heirs and assigns forever, and that the deed shall so stipulate."

On April 20, 1945 John Ramantanin and the plaintiff executed a deed for the North Church Street property to the purchaser and, on the same day, the purchase price, less the costs of sale, was deposited in the South Carolina National Bank of Spartanburg, South Carolina, on which account checks were to be paid only if they bore the pen signature of John Ramantanin and the plaintiff. The deposit, after deducting the costs of sale, amounted to $13,900.00.

On the same day that the deposit of the foregoing funds was made, two checks were drawn on the account, one in the amount of $2,010.00 payable to the Citizens and Southern National Bank in payment of a personal note of the

plaintiff and the other in the amount of $5,000.00 payable to John Ramantanin. Within approximately six months the joint account was completely exhausted by the issuance of a number of checks, all bearing the signatures of John Ramantanin and the plaintiff. No deed was ever made conveying any real estate to John Ramantanin for his life with remainder to the plaintiff, as stipulated in the agreement hereinabove set forth. .

The plaintiff alleges in his complaint, however, that all of the foregoing funds derived from the sale of the North Church Street property, plus additional personal funds contributed by him, were used in the purchase of the foregoing Asheville Highway lot and the construction of a house thereon, and that he did not know that the title to said lot had been taken solely in the name of John Ramantanin "until after he had finished paying for the house and lot as above stated." It is the contention of the plaintiff, therefore, that all of the funds derived from the sale of the North Church Street property were reinvested in the Asheville Highway property in question pursuant to the agreement above set forth between him and his father and that by virtue thereof the property should be impressed with a constructive or resulting trust in his favor, "under which trust it belonged to John Ramantanin as long as he lived, and at his death it belonged to the appellant (plaintiff) in fee simple."

The defendants deny that the plaintiff owns any interest in the property in question and interposed the defenses of *res adjudicata,* bar of the statute of limitations and laches. They also seek affirmative relief by way of an injunction against the prosecution of further claims by the appellant and, in the event the plaintiff's claim to the property is upheld, foreclosure of the mortgage held by the defendants, and the subjection of the property to the payment of the debts and administrative expenses of the respective estates of John and Daphne Ramantanin.

Both the Master, to whom the case was referred for trial, and the Circuit Judge, before whom exceptions to

the report of the Master were argued, held that the appellant had failed to establish his claimed title to the property in question under the alleged trust and that, even if the alleged trust had been established, the claim of the plaintiff was now barred by his laches. Both the Master and the Circuit Judge further held that the defendants were entitled to the injunctive relief which they sought and, accordingly, the appellant was "permanently enjoined from prosecuting any action and from making any other claim or demand with respect to any of the property, real or personal, formerly owned by Daphne Ramantanin or John Ramantanin, and from prosecuting any action, claim or demand of any kind against the defendants upon matters arising prior to the commencement of this suit."

The plaintiff has appealed from the foregoing order of the lower Court. He has filed seventy-six exceptions, accompanied by written argument of one hundred fifty-one pages, which, he states, presents ten questions for decision. Under our view of the matter, however, we need decide only two questions, to wit: (1) Did the lower Court err in holding that the plaintiff was barred from asserting his claim to the property in question by his laches, and (2) Did the lower Court err in granting an injunction against the prosecution of any and all further claims by the plaintiff with respect to any of the property formerly owned by John and Daphne Ramantanin?

The record contains voluminous testimony on the part of the plaintiff in which he seeks to prove that the funds derived from the sale of the North Church Street property, together with additional personal funds, were invested in the property in question in accordance with the foregoing written agreement between him and his father. The Master and Circuit Judge have concurred in the finding that the evidence falls short of that clear, definite, unequivocal, and convincing proof required in the establishment of either a constructive or resulting trust. *Carmichael v. Huggins,* 221 S. C. 278, 70 S. E. (2d) 223; *Privette*

*v. Garrison,* 235 S. C. 119, 110 S. E. (2d) 17. They have further held that, even if the plaintiff had established by the requisite proof the existence of a trust relationship, he is now barred by laches from obtaining a judicial determination to that effect.

■ We find it unnecessary to decide whether the evidence in this case meets the test required for proof of the claimed trust, or the nature of the trust attempted to be asserted, that is, whether a constructive or resulting trust. For the record here clearly shows that if the plaintiff had any right to assert ownership of the property, he is now barred by his laches from asserting it.

The Asheville Highway property in question was acquired as a vacant lot by John Ramantanin by deed dated February 12, 1942, for recited consideration of $850.00. He gave a purchase money mortgage for $350.00 securing a note which called for payments of $50.00 per month, with a final payment due on or before September 12, 1942. Two payments of $150.00 each were made on March 2 and April 4, 1942, leaving a balance of $52.24. The satisfaction of the mortgage bears no date, but the record amply sustains the conclusion of the lower Court that the lot in question was paid for by John Ramantanin long before the plaintiff claims that the funds from the sale of the North Church Street property were invested in it.

Construction of a house on the property in question was begun in July, 1945 and completed in March, 1946. It is this house that plaintiff claims was constructed with his personal funds and the funds from the sale of the North Church Street property. The plaintiff and his father were in business together and the record sustains the inference that the plaintiff knew at the time, contrary to his contention, the status of the title to the property in which he allegedly was investing his funds.

However, assuming that plaintiff did not know that the title to the property was solely in the name of his father at

the time of the construction of the house in 1945, the record clearly shows by his own testimony, that he knew that title was in the name of his father in 1947. He testified that in 1947 he demanded of his father that the title to the property in question be corrected to insure a remainder interest therein to him. His father refused to do so and the plaintiff then employed an attorney to seek the judicial establishment of the alleged trust relationship. The attorney prepared a complaint and filed a *lis pendens,* but the complaint was never served. The record does not disclose whether John Ramantanin ever had notice that the *lis pendens* was filed or the complaint prepared, but it does show that he refused to convey a remainder interest in the property to the plaintiff. As stated by the Master: "The importance of this evidence is that Alexander Ramantanin, the plaintiff here, had full and certain notice that his father would not voluntarily perform the necessary acts to vest the record remainder in plaintiff. Plaintiff gives absolutely no excuse for his delay unless it be that he was not entitled to possession during his father's lifetime. This is not sufficient to excuse plaintiff's delay in this case. The fact that a complaint (upon the identical cause of action now before the Court) was prepared in 1947 shows that the plaintiff knew then that he would some day have to establish his interest, if any, in a lawsuit." Certainly, the refusal by his father in 1947 to convey a remainder interest in the property constituted notice to the plaintiff of a denial of any trust relationship in connection with the property.

The fact that the plaintiff, if his claim were established, would not be entitled to possession of the property until the death of his father, John Ramantanin, did not deprive him of the right to earlier bring an action to establish the alleged trust relationship. "Facts giving rise to a resulting or constructive trust in themselves give rise to a cause of action, equitable in character, to declare and enforce the trust; the cause of action arises at the moment that the trust arises." 54 Am. Jur. 445, Section 573.

It is impossible to adopt a general rule by which the application of the rule of laches may be determined. The determination of the question rests largely within the discretion of the Court and "proceeds in the light of the circumstances of each case, taking into consideration among other things whether the delay has worked injury, prejudice or disadvantage to one of the parties." *Jannino v. Jannino,* 234 S. C. 352, 108 S. E. (2d) 572, 578.

It is generally held, however, that "laches connotes not only undue lapse of time, but also negligence, and opportunity to have acted sooner, and all three factors must be satisfactorily shown before the bar in equity is complete." *Babb v. Sullivan,* 43 S. C. 436, 21 S. E. 277, 279.

The facts here amply support the conclusion of the Master and the Circuit Judge that plaintiff's laches bar the assertion by him of any right to the property in question. The record conclusively shows that John Ramantanin in 1947 refused to convey a remainder interest in the property in accordance with the claim of the plaintiff. John Ramantanin died on February 20, 1959, twelve years later, and this action was commenced on March 19, 1960. This action was, therefore, not instituted until after the death of John Ramantanin and approximately thirteen years after notice to the plaintiff that his father refused to execute title to the property in accordance with his claim.

The failure of the plaintiff to sooner seek a judicial determination of his claim has made it most difficult, if not impossible, to arrive at a safe conclusion as to the truth of the matters in controversy. The basic issues in the case involved factual matters about which only the plaintiff and his father, John Ramantanin, knew. Many of the material facts and circumstances have become obscured by time. Because of the death of John Ramantanin, the other party to the claimed transaction, the defendants have been placed at a great disadvantage in defending their position.

The plaintiff knew for twelve years before his father's death that his father had refused to execute title to the property to conform to the alleged agreement. Plaintiff failed to assert his rights during that period of time and he offers no satisfactory explanation of his refusal to do so. In fact, he employed counsel in 1947 for the purpose but failed to pursue the matter further. His laches clearly bar him from the assertion of any right to the property now. As stated in the case of *Privette v. Garrison, supra*, 235 S. C. 119, 110 S. E. (2d) 17, 22: "The difficulty, if not impossibility, in these circumstances, of arriving at a safe and certain conclusion as to the truth of the matter in controversy, and thus doing justice between the parties, calls for the application of this equitable doctrine. *Main v. Muncaster*, 171 S. C. 269, 172 S. E. 222; *Jannino v. Jannino, supra*.

" 'While the rule requires for its support no element of estoppel, but is founded on public policy, the fact that the delay has tended to defeat defendant's power to prove his right is an additional reason for its application; and relief is more readily denied in case of the death of a party to the transaction than in other cases, since his death usually presents difficulties in procuring evidence and conducting the defense other than those arising from the mere loss of his testimony. To bring the rule into operation, it is not necessary that the court should be convinced that the original claim was unjust or has been satisfied; it is sufficient if the court believes that under the circumstances it is too late to ascertain the merits of the controversy.' 30 C. J. S., Equity, § 119, Page 542."

The remaining question concerns the issuance by the lower Court of an injunction against the prosecution by the plaintiff of any further claim with respect to this and any other property owned by John and Daphne Ramantanin upon matters arising prior to the commencement of this action. An injunction with such broad application was issued by the lower Court upon the ground that plaintiff's prior course of action in connection with litigation

involving the estates of John and Daphne Ramantanin appeared "to have been vexatious and the pattern indicates a threat of further harrassment of defendants unless he (the plaintiff) be enjoined."

The only other action heretofore prosecuted by the plaintiff affecting the property here involved was one to set aside the will of his father, John Ramantanin, which was unsuccessful. This suit was then instituted. Prior to the institution of this action several successive notices of *lis pendens* affecting the property here in question were filed by the plaintiff and each eventually dismissed by the Court for failure to institute an action pursuant to the notice. Finally, a notice of *lis pendens* was filed and the present action instituted on March 19, 1960.

While a party will not be permitted to maintain an action which is merely vexatious, *Ex Parte Fant,* 147 S. C. 167, 145 S. E. 34, and a court of equity may properly intervene to prevent continued and vexatious litigation, 28 Am. Jur. 717, Sections 209 and 210, the power to enjoin upon such ground should be exercised with caution and only in a clear case. The record before us fails to show the pendency of any other litigation between the parties or the threat of further litigation and, therefore, there was no basis for the issuance of the injunction by the lower Court.

The order of the lower Court is, accordingly, modified by eliminating therefrom the injunction provisions, but is otherwise affirmed.

Modified and affirmed.

TAYLOR, C. J., and MOSS and BUSSEY, JJ., concur.