19242

W. G. WALLACE, Respondent, v. M. C. WALLACE, Individually and as Administrator of the Estate of J. W. WALLACE, Appellant

(182 S. E. (2d) 60)

*Messrs. McKay, McKay, Black, Sherrill, Walker & Wilkins,* of Columbia, and *George W. Keels, Esq.,* of Florence, *for Appellant,*

*Dan M. McEachin, Esq.,* of Florence, *for Respondent,*

*Messrs. McKay, Black, Sherrill, Walker & Wilkins,* of Columbia, and *George W. Keels, Esq.,* of Florence, *for Appellant, in Reply*

June 16, 1971.

Lewis, Justice:

This action involves the ownership of certain shares of stock registered in the name of J. W. Wallace, Sr., at the time of his death in 1928 and the right of plaintiff, an heir at law, to now require the defendant as administrator of the estate of the deceased, to account for the stock.

The late J. W. Wallace, Sr., died intestate on January 10, 1928, and his son, the defendant-appellant, M. C. Wallace, was appointed administrator of his estate on January 28, 1928. The present heirs at law of the deceased are his three sons: plaintiff-respondent, W. G. Wallace; appellant; and J. W. Wallace, Jr., who is not a party to this action.

At the time of the death of J. W. Wallace, Sr., there was registered in his name four shares of the stock of Mount Hope Cemetery Association of Florence, South Carolina. These shares of stock were duly listed as property of the deceased in the inventory and return of the appraisers of the estate, filed in the office of the Probate Judge for Florence County on February 28, 1928. Attached to the return of the appraisers was a sworn statement by appellant, as administrator, that the inventory was correct and contained a true statement of all of the real and personal property of the deceased.

Thereafter, on April 30, 1928, without the knowledge of respondent or court approval, in so far as this record shows, appellant, as administrator, claiming that he owned the stock, transferred the same to J. W. Wallace, Jr. On August 31, 1961, respondent addressed a letter to appellant requesting that he make distribution of the stock among the heirs. The requested distribution was not made and this action was instituted in January 1962, in which the court was asked to require appellant to account to respondent for his distributive share (1/3) of the stock.

Thereafter, on June 1, 1966, J. W. Wallace, Jr., transferred the stock to appellant, individually; and the stock is now registered in his name. J. W. Wallace, Jr. claims no interest in the stock.

Upon the service of the complaint, appellant filed an answer in which he denied that the deceased ever owned any interest in the four shares of stock. He further alleged that in 1925 he purchased a number of shares of stock in the Mount Hope Cemetery Association and caused four shares

thereof to be registered in the name of the deceased for the sole purpose of having the deceased serve on the Board of Directors of the corporation. Appellant claims, in effect, a resulting trust in the stock in his favor. He admits that he transferred the stock from the estate without accounting to the heirs but asserts that he did so because the stock was owned by him.

The Master, to whom the factual issues were referred, and the trial judge concurred in findings that appellant had failed to establish his ownership of the stock in question, and ordered appellant to account to respondent for his distributive share.

This action was brought in the Civil Court of Florence, the jurisdiction of which, when this action was instituted, was limited to cases in which the claim did not exceed $11,000.00. Section 15-1608, 1962 Code of Laws. Appellant challenges in this appeal, for the first time, the jurisdiction of the lower court upon the ground that the value of the stock in controversy exceeded the foregoing jurisdictional limit. No fraud is charged; only that the stock was worth more than $11,000.00.

We held in *Piana v. Piana,* 239 S. C. 367, 123 S. E. (2d) 297, that, as a general rule, "the jurisdiction of a court depends upon the state of affairs existing at the time it is invoked." The jurisdiction of the lower court depended upon the amount in controversy, which must therefore be determined as of January 1962, when the action was instituted.

In the absence of the issue being raised by some appropriate defensive pleading, the amount in controversy, for jurisdictional purposes, is ordinarily determined from the allegations of the complaint. *DuPre v. Gilland,* 156 S. C. 109, 152 S. E. 873; *Williams v. Workman,* 113 S. C. 487, 101 S. E. 833; 21 C. J. S. Courts § 69; 20 Am. Jur. (2d), Courts, Sections 155 and 156.

The complaint in this action alleged that "the value of the shares of stock in controversy does not exceed the jur-

isdictional limits of this court." This allegation was admitted in the answer of the appellant.

Upon the service of the complaint, appellant had the right to object to the allegation as to the value of the stock. Instead of doing so, he admitted that such was true. The failure of appellant to timely contest the allegation of the complaint relative to the amount in controversy constituted a waiver of the right to thereafter object to the value so placed by plaintiff on the property for jurisdictional purposes; and upon which the court has proceeded to exercise jurisdiction.

The uncontested allegation of the complaint as to the value of the stock in question determined jurisdiction. The record shows the requisite jurisdictional facts and the objection to the jurisdiction of the lower court is therefore overruled.

A further preliminary question concerns the refusal to permit appellant to amend his answer so as to allege the defense of estoppel. The motion to amend the answer was made during the first hearing before the Master. The Master refused the motion and his action was affirmed by the trial judge.

The facts upon which the alleged estoppel was based were known to appellant for approximately one year prior to the time the motion to amend was made. No reason appears for the delay until the trial was in progress to attempt to interpose this new defense. Under these circumstances, we find no abuse of discretion on the part of the lower court in denying the motion to amend the answer.

Appellant also contends that this action is barred by the equitable doctrine of laches.

Although appellant was appointed administrator in 1928, he has never been discharged by the probate court. It does appear that an application for a final discharge was made in August 1965, after this action was instituted. The present record is silent as to any distribution of the per-

sonal property of the estate; nor is there any showing that an accounting has ever been made to the probate court.

It is true that the present action was not brought until approximately thirty-three years after distribution of the estate could have been demanded. On the other hand, the administrator had the same length of time in which to wind up the affairs of the estate. It may well be that there were circumstances which might explain the delay. If so, they have not been shown in this record. We have before us only that appellant was appointed administrator in 1928; he has never received his final discharge as such; and nothing to show a distribution of the personal estate or that an accounting has been filed. Assuming, as contended by appellant, that a presumption of payment or distribution to the heirs of the personal property might arise from such long lapse of time, such would not apply to the stock involved in this action. Appellant does not defend upon the ground that the stock was distributed to the heirs, but rather upon the ground that the stock was transferred from the estate under a claim of ownership by him. Such claim affords no basis for a presumption of distribution to the heirs.

The stock in question was transferred from the estate by the administrator under a claim that he owned it and not the heirs. No order of the probate court was obtained authorizing the transfer, nor is there any showing that the administrator ever brought home to respondent, an heir at law, the fact that he was making an adverse claim to the stock. Therefore, under this record, it appears that, although he was acting in the capacity of a trustee, appellant undertook to dispose of assets of the estate contrary to the trust, without obtaining court approval of such transfer or bringing to the attention of respondent, an heir, the fact that he claimed ownership of the stock.

If an administrator has in his possession property of the estate, to which he has an adverse claim, it is his duty to bring such adverse claim to the attention of the court and

those who are beneficially interested so that the conflict can be resolved. He has no right to secretly sit in judgment on the merits of his adverse claim against the estate, write his own verdict, and use his authority as administrator to transfer the claimed asset as he decides. As a general rule, where an administrator does so, he has no standing to claim, when he is called to account for the transferred asset, that an heir who demands the accounting is guilty of laches. The present record presents such a situation.

If appellant had handled his adverse claim to the stock in accordance with the principles governing the administration of his trust, the difficulties which he now confronts in establishing his ownership of the stock might have been avoided. He is simply in no position to charge his present situation to laches on the part of those for whose benefit he was administering the estate.

The burden was on appellant to establish his defense of laches and his right to rely thereon. He has failed to do so.

See: *Charleston Library Society v. Citizens & Southern National Bank,* 201 S. C. 447, 23 S. E. (2d) 362.

The next question involves the claim of appellant that he owned the stock in question and that the lower court erred in not so finding. This claim is based upon appellant's assertion of a resulting trust in the stock in his favor.

It is well settled that, while a resulting trust may be proven by parol, the evidence to establish it must be clear, definite and convincing. "And where the claim to such a trust is based upon payment of the purchase money * * *, such payment must be clearly and unmistakably shown to have been so made at or before the time of the purchase." *Privette v. Garrison,* 235 S. C. 119, 110 S. E. (2d) 17.

The only proof to sustain appellant's contention that he paid for the stock is his own testimony and that of his brother, J. W. Wallace, Jr., to whom the stock was originally transferred in 1928. While objection was interposed

by respondent to this testimony as violative of the Dead Man Statute, Section 26-402, 1962 Code of Laws, and considered inadmissible by the trial judge, its probative value, if admissible, was found of insufficient weight by both the master and trial judge to establish the resulting trust in the stock as contended by appellant. Since the record amply sustains the concurrent findings of the master and trial judge, assuming, as they did, the admissibility of the foregoing testimony, we find it unnecessary to determine the question presented in this appeal as to whether such testimony was, in fact, admissible.

The stock was registered in the name of the deceased and the stock certificate, evidencing his ownership, was in his possession at the time of his death. Appellant, who now claims otherwise, listed the stock as the property of the deceased in the inventory of the estate and signed a sworn statement as to its truth as administrator. These facts are inconsistent with the trust which appellant now seeks to establish. The master and trial judge concluded that the evidence was of sufficient probative value to render the oral testimony of appellant and his brother insufficient to establish the resulting trust by the required degree of proof. This involved a resolution of the conflicts in the testimony in the light of the credibility given to the testimony of the witnesses, a duty peculiarly within the province of the trier of the facts. We find nothing to warrant a reversal of the factual finding that the stock in question was owned by the deceased and not by appellant.

Under the rules governing our review of concurrent factual findings, we think the decision of the lower court, requiring appellant to account to respondent for the stock in question, is amply supported by the record.

Finally, appellant charges that the lower court erred in settling the case for appeal. As a part of the case and exceptions, appellant proposed to include therein a statement of certain testimony which he designated as

"undisputed facts." Respondent objected to the inclusion of the proposed statement on the ground that he could not agree that the facts were undisputed.

Appellant takes the position that Section 4 of Rule 4 of the Rules of the Supreme Court requires that the Transcript of Record contain a statement of the undisputed facts in the case. He further contends that, when he proposed to include what he considered to be the undisputed facts, it became the duty of respondent to object specifically to those facts which he contended were disputed, and that the trial judge should have determined any disagreement thereabout.

The pertinent portion of Section 4 of Rule 4 of the Rules of this Court states:

"Undisputed facts must be stated without the testimony, and only the testimony as to disputed facts shall be stated, omitting all that is irrelevant to the issues to be decided."

Upon the refusal of the respondent to agree that the facts as stated by appellant were undisputed, the trial judge excluded the statement from the record, holding that the foregoing rule did not require a party on appeal to stipulate that a fact is undisputed. He concluded that "either party to the appeal should be required to have any fact in issue resolved by reference to the record of the proceedings presented to the trial court."

The purpose of the quoted provision of the rule is to eliminate the expense of printing testimony as to undisputed facts. When appellant served on respondent the proposed statement of undisputed facts, it then became the duty of respondent to object specifically to those facts included in the statement which he considered disputed. Any disagreement between the parties should have been resolved by the trial judge. Either party disagreeing with the order of the trial judge thereabout would have available the procedures provided for appeal in such cases.

An examination of the proposed statement of "undisputed facts" readily reveals that they were undisputed. The

statement of undisputed facts should have been allowed, thereby eliminating the necessity of printing the testimony to support them. The exception charging error in this regard is sustained.

In accordance with the foregoing views, the judgment of the lower court is affirmed; and the order settling the case for appeal is reversed.

Moss, C. J., and Bussey, Brailsford and Littlejohn, JJ., concur.